## ABRAM JEWETT and ABBY P. his wife *vs.* THOMAS J. JEWETT.

Where a deed conveyed to the grantee a water-course, and by implication, the water which it was intended to conduct to a mill, the granting part of such deed containing the words "to him and *his heirs, executors and assigns forever ;*" and a covenant for quiet enjoyment, at the close of the deed, ràn to the grantee and his heirs and assigns, and contained a stipulation that he or they might enjoy the premises "*forever,* or as long as he may want the water for machinery, and no longer ;" *Held* that the words of the grant conveyed a freehold interest of inheritance to the grantee ; and that the *grant* was not limited or restricted by the terms of the *covenant.*

*Held also,* that the right to the water, and the right to have it flow in its channel, being created by deed, was not lost by the omission of the grantee to exercise the right, for a few years.

An easement, to become extinguished by *disuse,* must have been acquired by *use.* The doctrine of extinction by *non user* does not apply to servitudes or easements created by *deed.*

No man can lose a freehold interest which has been conveyed by deed, and that deed recorded, by the fault of strangers.

Accordingly, where the plaintiff owned a water-course, and the water flowing therein, under a deed in fee from the former owner ; *it was held* that the plaintiff's right could not be divested by the act of trespassers, in demolishing the dam and bulkhead, thereby causing the water to flow through another channel, and across the lands of others.

THIS suit was commenced before a justice of the peace in the county of Jefferson, and was removed to the supreme court by a plea of title, pursuant to § 55, &c. of the code, on the 28th day of December, 1849. The action was first brought to trial at a

*Jewett v. Jewett.*

circuit court held in the county of Jefferson, on the 17th day of April, 1850, before his honor Frederick W. Hubbard, one of the justices of this court, and a verdict was rendered therein for the plaintiffs, for six cents damages. Motion was made to the supreme court at a general term to set aside the verdict, which motion was granted, and the action was again brought to trial at the April circuit in 1851, before hon. D. Pratt.

The complaint averred in substance that the defendant, on or about the 1st day of December, 1849, wrongfully broke and entered in and upon a certain lot of land occupied and possessed by the plaintiffs, and known as a water-course for the conveyance of water to the mill and other works of the said plaintiffs in the town of Le Ray, Jefferson county; and that the defendant tore away a dam erected there, and filled up with stones and earth the said water-course or ditch, by which acts the plaintiffs sustained damage to the amount of $100; and they demanded judgment therefor against the defendant. The answer denied all the allegations of the complaint, and averred in substance that the defendant at the time of the alleged commission of the acts mentioned in the complaint, was the owner of a certain described piece of land in Le Ray, through which a creek called West creek had flowed from time immemorial, and that he was entitled to the full benefit of the natural flow thereof. That in September, 1849, the plaintiff or his agents wrongfully diverted the waters thereof from a point a short distance above the said premises, by which diversion the defendant had sustained great injury; and that his acts complained of in the complaint, were such only as he might legally do to restore the waters of the creek to their natural channel. The plaintiffs, in their reply, denied all the allegations in the answer. They also denied that at the times of the commission of the several acts complained of, West creek flowed through and upon the said premises, and that West creek had so flowed from time immemorial, but on the contrary, alleged the truth to be that a large portion of said creek did flow and had flowed through the said canal for a long space of time, to wit, for more than twenty-five years, and that the plaintiff Abby P. Jewett had a deed or lease

thereof, of which the defendant had notice; and the plaintiffs denied that the defendant and his grantors were and that the defendant now is, entitled to the full benefit of the natural flow of said stream upon said land, but on the contrary they asserted the truth to be that the plaintiffs have a right to use so much of the water of said creek as they desire, so long as they may want the same for purposes of machinery, and that they have the right to divert the same from their natural channel above the said land of the defendant, but denied that the diversion thereof caused the defendant great damage or injury, or any damage whatever; and the plaintiffs insisted that the diversion of said creek from its natural course was such a diversion as they had a lawful right to make, under a grant for that express purpose, and that such diversion had existed for more than twenty-five years; and they denied that the defendant had any right whatever to restore the waters of said creek to their natural channel, so long as the plaintiffs wished to use them, or at any time whatever.

On the trial the plantiffs gave in evidence the following deeds, to wit: *First*. The record of a deed from Roswell Woodruff and wife to Ezekiel Jewett, the grandfather of the plaintiff, of 1200 acres of land in the town of Le Ray, bearing date 31st May, 1819, of which lands the premises in question in this suit formed a part, which deed was received and read in evidence, and was duly recorded the 15th day of July, 1819.   *Second*. The record of a deed from Ezekiel Jewett and wife to Ezekiel Jewett, jun. dated the 20th March, 1830, which said deed conveyed to the grantee, " and to his heirs, executors, administrators and assigns *forever, a free and convenient water-course, ditch or canal for* the conveyance of water to grist mill of the said party of the second part, as the same is now made across the lands of the said party of the first part, and to have privilege of keeping up the dams and flumes, the inlets and outlets, and flow all the ground now flowed, or to be flowed by the dams already raised for the use of said grist mill, and to have the privilege of opening the outlets or waste gates for the purpose of clearing the canal or ditch of the mud and sand that may from time to time run into

Jewett v. Jewett.

the said canal and obstruct the passage of the water." The deed concluded as follows : " All which described premises the said party of the first part, for himself, his heirs and assigns, doth hereby covenant, promise and agree to and with the said party of the second part, his executors, administrators and assigns, that he the said party of the second part, his executors, administrators and assigns performing the covenants herein before described, he and they shall and may peaceably have, hold and enjoy the said premises forever, without interruption or molestation of the said party of the first, his heirs or any other person or persons, claiming or to claim, any of the above described privileges or premises whatsoever, or so long as he may want the use of the water for machinery, and no longer." This deed was recorded in the county clerk's office of the county of Jefferson, the first day of May, 1830. *Third.* The plaintiff also gave in evidence a deed of the same premises and rights, as are mentioned and described in the deed last aforesaid to the plaintiff, Abby P. Jewett, and the grant and limitation were in the same words. Deed dated 26th August, 1848, and recorded 17th February, 1849. The plaintiffs then called Ezekiel Jewett, who testified as follows : " I conveyed the premises to Abby P. Jewett and am father of Abram Jewett her husband. My father and myself dug the canal in question while my father owned the land. The canal is 300 rods long. It was constructed to carry water to the grist mill. My father did not own the grist mill when the canal was dug. It was conveyed to me the year before—it was then used for a grist mill. The mill has always been used when not out of repair—not always as a grist mill ; it was used for grinding water-lime at the time of the trespass. The mill was supplied by connecting several small streams ; these streams were supplied by springs located as marked (1, 2, 3,) on the diagram ; ditches were dug from " one" and " three" by which the water was carried into "two," and flowed from thence into a pond near the grist mill ; the other stream was " West creek," which was carried to the mill by the canal in question. One of the ditches leading from " three" to "two" was ploughed into and the water forced back into the natural channel of the

Jewett v. Jewett.

creek.(a) The canal in question was put in repair in 1849; a part of it, about 40 rods next the mill, had always been in use; the rest had been partially filled up; the bulkhead was torn away in 1831, in the night, without my consent; the water was not wholly taken from canal before this to my knowledge; removing the bulkhead caused a diversion of the water from the canal; I have no knowledge of any obstruction of the canal before 1831; after 1831, the mill was supplied with water from spring brooks, not enough to supply the mill; could only use the water by stopping and allowing pond to fill; I repaired the canal partially so water flowed through the whole length of it in 1831." The witness further testified that since that year, no water had been taken from West creek, through the canal. Another witness testified that the plaintiff repaired the canal in the fall of 1849; and that the defendant filled it up, in December of that year, by throwing stones into it, so as to stop the flow of the water.

(a) DIAGRAM of the premises in question:

Jewett *v.* Jewett.

The defendant gave in evidence the following deeds: 1st. A deed from Ezekiel Jewett, sen., to Liberty Jewett and the defendant, of 400 acres of land, embracing the land through which the canal runs, except about 70 rods of said canal nearest the mill; said deed was dated 2d April, 1830, and contained the following reservations, to wit: "Excepting and reserving therefrom four acres and 12-100ths nearly, deeded to Ezekiel Jewett, jun., and canal ditch, as by reference to his lease will more fully appear," and it was admitted that Liberty Jewett quitclaimed to the defendant in 1830, one-half of said 400 acres, being the part through which canal runs. 2d. A warranty deed from Ezekiel Jewett and wife, to William Field, dated 8th May, 1827, for 92-100 acres of land which was part of the land included in the deed from Roswell Woodruff to said Jewett, which said deed was recorded December 20, 1827, and the premises mentioned in said deed were conveyed without any exception or reservation whatever. 3d. A deed from said Field, of the same premises, to Chester Russell, dated 8th March, 1834, without exceptions or reservations, duly recorded 25th day of March, 1834. 4th. A deed from said Russell to John W. Shaw and Betsey Shaw of the same premises, without exception or reservation, dated 15th June, 1842, and recorded 18th April, 1845. 5th. A deed from John W. and Betsey Shaw to the defendant of the same premises, without exceptions or reservations, dated 31st October, 1845, and duly recorded October, 31, 1845. The defendant proved that during a portion of the time between the years 1831 and 1849, the bed of the canal had been cultivated; that grass had been mowed, and potatoes planted in it.

The proofs being closed, the defendant's counsel requested the court to charge the jury, 1st. That if from the acts of the plaintiffs, and the nonuser for so many years, the plaintiffs or those under whom they claimed had intended to abandon the use of the canal, then that the right of the plaintiffs to use said canal had ceased, and the land reverted to the defendant. 2d. That nonuser for 20 years was not required to bar the plaintiffs' right in this case, if the jury should find from the facts proved an intention to abandon the right. The court refused so to charge

the jury, and decided that there was no question of fact to submit to the jury; that the evidence showed a mere nonuser for a period less than 20 years; and that a nonuser for less than 20 years constituted no answer to the action; to which charge the defendant's counsel excepted. The defendant's counsel then called upon the court to charge the jury, that Field having purchased the 92-100 acre piece from old Mr. Jewett without any reservation in the deed, and the canal not having been used for the conveying water to the mill since 1831, those purchasing this piece of land subsequent to 1831 without notice of any intention to resume the use of the canal, were entitled to the natural flow of the water along West creek, and that the plaintiffs had no right as against such purchasers to divert the water, and that the defendant having purchased said piece of land from a bona fide purchaser without notice, was also entitled to the natural flow of the water, through and along said creek, and had the right to prevent a diversion of the waters of said creek. The court refused so to charge, but instructed the jury that they should find for the plaintiffs six cents damages; to which charge the defendant's counsel excepted. The jury thereupon found for the plaintiffs, and against the defendant, a verdict of six cents damages. And from the judgment entered upon that verdict the defendant appealed.

*John Clark*, for the plaintiffs.

*J. Mullin*, for the defendant.

*By the Court*, GRIDLEY, J. Two principal questions are made on the part of the defense in this cause. The first turns on the construction of the deed executed by Ezekiel Jewett and wife to Ezekiel Jewett, jun. dated the 20th of March, 1830, and recorded on the 1st of May in the same year. The deed conveys the watercourse, and by clear implication the water which it was intended to conduct to the mill mentioned in the pleadings and testimony. And the only material question is as to the duration, or extent, of the grant. The granting part of the deed contains the words, to him " *and his heirs, executors and assigns forever*"—words of a

signification large enough to convey a freehold interest of inheritance to the grantee. There is nothing to limit these words, unless it be a covenant for quiet enjoyment, at the close of the deed. This covenant runs to the grantee and his heirs and assigns, and contains a stipulation that he or they may enjoy the premises "*forever*, or as long as he may want the use of the water for machinery, and no longer." Now there are two objections against a limitation of the *grant* by virtue of these words in the *covenant*. *First*, upon the general rule for interpreting repugnant clauses in a deed. The principle is thus laid down by Blackstone. (2 *Black. Com.* 381.) "That if, in a deed, there be two clauses so totally repugnant to each other that they cannot stand together, the first shall be received and the last rejected." Upon this principle, the covenant coming after the grant, and having repugnant words to the grant, must be rejected. But *secondly*, there is no necessary repugnancy in the different parts of this deed. The grantor might well make an unlimited conveyance of the water-course, which should convey all his interest in it forever, and still be unwilling to warrant the grantee the quiet enjoyment of it for longer than he should want the use of the water for machinery. The two parts of this deed, therefore, are entirely compatible with each other.

There is a material distinction between an easement acquired by prescription, and one created by deed. (*Angell on Watercourses, ed. of* 1850, *p.* 269, § 252.) This writer says, "An easement, to become extinguished by *disuse*, must have been acquired by *use ;* and the doctrine of extinction by *nonuser* does not apply to servitudes or easements created by *deed*. In the one case, mere *disuse* is sufficient; but in the latter there must not only be disuse by the owner of the land dominant, but there must be an actual *adverse user* by the owner of the land servient. Accordingly it was held in *White* v. *Crawford*, (10 *Mass. Rep.* 183,) that a grant of a right of way was not lost by a mere *nonuser* of twenty years. And in the case of *Arnold* v. *Stevens*, (24 *Pick.* 106,) that a grant of a right to dig ore was not lost by the neglect of the grantor, for forty years, to exercise the right, without an *adverse* enjoyment on the part of the owner

of the land, and will not extinguish the right.  And it was fur-
ther held that *a use and cultivation of the land* was not evidence
of an adverse enjoyment of the right to *dig ore.*  See further, on
this point, *Angell on Water-courses,* §§ 216, 7, 8, 251, 2, *and cases
there cited; Corning* v. *Gould,* (16 *Wend.* 531 ;) 4 *McCord,* 96 ;
3 *Kent's Com.* 448, 449.  Upon this principle, which is abund-
antly established by the authorities, the right to the water, and
the right to have it flow in the canal or channel, being created
by deed, was not lost by the omission to exercise the right for a
few years, between 1830 and 1848.  And there was no adverse
possession by the defendant for the requisite time, to extinguish
the right, even if the use of the land were deemed an adverse
use of the easement.  Nor was there any evidence of a perma-
nent obstruction, or any decisive evidence of the absolute aban-
donment of the right by the plaintiff or his grantor, even if the
right could be lost by that means.  The water was diverted,
and the bulkhead and dam were demolished by trespassers, and
against the will, and in violation of the rights, of the owner of
the water-course.  His rights could not be impaired by the hos-
tile acts of strangers ; nor by the fact that rather than engage
in a fierce quarrel, he for many years sought and obtained an
inadequate supply of water from other sources, to carry on his
machinery.  Again ; the defendant's counsel insists that the
purchase of the $\frac{22}{100}$ of an acre by Field, in 1827, of Ezekiel
Jewett, and the mesne conveyances by which the title to said
piece of land became vested in the defendant, operated to give a
right to the water in West creek ; and to authorize him to com-
mit the acts of trespass complained of.  It is not denied that
when the deed was executed to Field the water was flowing
through the canal, and that in point of law, and in point of fact,
Field got no right to the flow of the water in West creek, through
the $\frac{22}{100}$ of an acre of land ; but it is contended that a subsequent
purchaser of this piece of land, who bought it after the dam and
bulkhead were demolished by trespassers, and when the water
was flowing through the channel of West creek, took by his grant
not only the land but also the incidental right to the flow of the
water.  And though the plaintiff's grantor had before then got

a deed of the water-course, which deed was on record, yet such purchaser took the right to the water flowing through the land; and the defendant, notwithstanding he bought the land with full notice of the plaintiffs' right, took the same right to the flow of the water in the natural channel that his grantor had. This is an erroneous conclusion. No man can lose a freehold interest which has been created by deed, and that deed recorded, by the fault of strangers. The act of trespassers, in demolishing the dam and bulkhead, thereby causing the water to flow through West creek, cannot divest a right thus acquired and held; and no authority maintains such a doctrine. The case cited in support of it falls far short of meeting the facts stated in the evidence before us. Without disputing the authorities when applied to proper cases, it is sufficient to say that they do not touch a case like this. Old Mr. Jewett never conveyed to Field any right to the water in the stream; and he afterwards, and before Field conveyed this piece of land, (which was in 1844,) transferred the water-course and water to the plaintiff's grantor, and put the deed on record. Now, as between the grantee of this water-course and the grantee of Field, the latter never obtained any right to the water running through the land. Field did not own any such right, and could convey none. The act of the trespassers who tore away the dam could not invest Field, or his grantee, with a right to the water which had been conveyed to Ezekiel Jewett, jun. before that time. It may be a question whether Field would, or would not, be responsible on his covenant contained in the deed to Russell, for the withdrawal of the water by the plaintiff; on which point we express no opinion.

Had the defendant the right which he assumes to have, his true course was to have brought *his action*, instead of committing the acts complained of in this suit; and without discussing his right to redress his own wrongs by force, in the way he chose to do it, it is enough to say that the assumption that he had any right to this water-course, or any right to commit the acts for which this action was brought was founded on an erroneous conclusion as to his legal rights. There was no conflicting evidence

in the case, for the justice to submit to the jury. His ruling was right, and a new trial is denied.

New trial denied.

[ONEIDA GENERAL TERM, January 3, 1853. *Gridley, Pratt, W. F. Allen* and *Hubbard,* Justices.]