## BROOKS *v*. RIDING.

VENDOR AND PURCHASER.—*False Representations.—Knowledge.*—Where a vendor, to induce the vendee to purchase a certain lot of ground, represented to him that the lot was the ground inclosed by a certain fence, which ground was examined by the vendee and had long been known to him; that the lot had a frontage of a certain number of feet on a street; when the fact, unknown to the vendor and vendee, was, that the fence inclosed five feet in width of a street and as many feet less than the frontage so represented by the vendor;

*Held*, that, in an action for the purchase money, the vendee might defend as to so much of the price as was agreed to be paid for the five feet in width of the street so inclosed.

STREETS.—*Adverse Possession.—Easements.*—The rights of the public in a street of a city cannot be impaired or destroyed by the inclosure and occupancy thereof, by fencing, by an adjoining land-owner claiming title thereto.

EVIDENCE.—*Admissions.*—Testimony of an admission by defendant, that he was willing to pay the claim sued on if he had not been sued on it, is inadmissible.

From the Allen Common Pleas.

*J. A. Fay* and *L. M. Ninde*, for appellant.

BUSKIRK, J.—The appellant brought this suit to foreclose a mortgage made by the appellee to secure divers notes, a balance of which was claimed by the appellant to be due.

The defendant answered payment, set-off, and a paragraph alleging fraudulent representations in the sale of the property, for the purchase-money of which the notes and mortgage were taken.

The controversy between the parties arose upon this last answer and the issue formed upon it. It alleges that Riding contracted for the purchase of a certain lot from Brooks for one thousand eight hundred and fifty dollars; that when they met to execute the papers Brooks represented to Riding that he had measured the lot and found that it contained fifty-five feet instead of fifty feet as the parties had supposed, and that he would not take less than two thousand dollars for it; that Riding, believing these representations and relying upon them, made the purchase at two thousand dollars, and executed the note sued on, with others, and the mort-

gage, to secure the same; that, in fact, the said lot was only fifty feet front; that such representations were falsely, knowingly, and fraudulently made by the said Brooks, by means whereof the defendant was induced to agree to pay for such lot the additional sum of one hundred and fifty dollars.

Issues were formed upon the answer and submitted to a jury for trial and resulted in a verdict for the defendant. A motion for a new trial was overruled, and judgment was rendered accordingly.

The error assigned is the overruling of the motion for a new trial.

Several reasons are assigned by counsel for appellant why the verdict was not sustained by the evidence. The evidence is properly in the record. The defendant was sworn and examined as a witness and gave all the evidence he offered to sustain his plea of fraud. He stated that he had a negotiation for the lot with Brooks, when he agreed to take one thousand eight hundred and fifty dollars for it; and that he went down the next day to see Brooks, and they went together to see the lot, and when they got there Brooks said it must be fifty-five feet front. He proceeds thus:

" I then stood by the front of the lot and Brooks stepped the lot, that is, across the front of it, and said it was fifty-five feet wide, and that it was worth more than one thousand eight hundred and fifty dollars; that he would not take less than two thousand dollars for it. I said if it was fifty-five feet wide it was worth more than if it was only fifty feet, but I never knew how wide the lot was. * * He said when we were at the lot, it was fifty-five feet wide, and that if I would give him two thousand dollars I could have it. He did not say anything about measuring the lot."

The witness further testified that he had resided on the lot adjoining the one he purchased for twelve years prior to such purchase, and had seen it every day; that it was fenced fifty-five feet wide, and had been ever since he knew it; that he took possession of the lot just as it was fenced and held it until the city engineer told him the fence was

on the street, when he moved it back; and that the lot with fifty feet front was worth one hundred and fifty dollars less than it would have been with fifty-five feet front.

The further facts appeared, about which there was no controversy, that Brooks held the lot under the Ewings, who had owned and occupied it adversely for about thirty years previous to the sale to Riding; that during all that time the strip of five feet in controversy had been fenced in as a part of said lot, and the possession thereof was passed from the Ewings to Brooks and from him to Riding as a part of the lot.

It is earnestly contended by counsel for appellant that the evidence wholly failed to establish any fraud on the part of Brooks, because there was no evidence showing or tending to show that he knew or had any reason to suspect that the five feet in controversy did not constitute part of the lot he sold. It is claimed that it lacked two essential elements of fraud, the *scienter* of Brooks and Riding's reliance upon the representations and his right to do so.

A reference is made to several adjudged cases holding that, to constitute fraud, the representations must have been not only false in fact, but must have been made knowing them to be false.

The question sought to be raised was decided by this court adversely to the appellant in the case of *Frenzel* v. *Miller*, 37 Ind. 1.

In that case, we held that "if the statement be in fact false, and be uttered for a fraudulent purpose, which is in fact accomplished, it has the whole effect of fraud in annulling the contract, although the person uttering the statement did not know it to be false, but believed it to be true;" and that "he who sells property on a description given by himself, is bound to make good that description; and if it be untrue in a material point, although the variance be occasioned by a mistake, he must remain liable for that variance."

It was further held in that case that a representation false in fact, although made by mistake, would entitle the party relying thereon, and who had been injured thereby, either to rescind the contract or maintain an action thereon to recover damages or to base a defence to an action brought to enforce the contract.

It very clearly appears from the evidence that Brooks represented that the lot was fifty-five feet wide; that Riding did not know the width of the lot, but made the purchase in reliance upon such representation. It is true that Riding examined the lot and saw it stepped and saw for himself that fifty-five feet were inclosed by the fence, but he did not know that five feet had been fenced which belonged to the public, and therefore had the right to rely upon the representation of Brooks that the lot contained fifty-five feet. The cases of *Port* v. *Williams*, 6 Ind. 219, and *Williams* v. *Port*, 9 Ind. 551, are not in point, because Riding could not tell from a personal examination that any portion of the street was inclosed by the fence, but relied upon the statement of Brooks that the lot contained fifty-five feet of frontage.

It is further insisted by counsel for appellant that the verdict was not supported by the evidence, because it showed that the five feet of ground in controversy belonged to Brooks and passed by his conveyance to Riding.

The following extract from the brief of counsel for appellant will show the position assumed and the argument offered in support of it. They say:

" The evidence shows an adverse possession in the plaintiff and those under whom he held for about thirty years. The dedication of a street to the public simply by filing a plat is incomplete and passes no title until the owner vests the possession in the public; that the public should be allowed to stand by thirty years without even claiming possession or the use of the street marked upon a plat while the ground is being improved or transferred from hand to hand, for value, all the time being held adversely, is a dangerous doctrine.

"By the statute in force when the addition containing this lot was laid out, the recording of the plat operated as a warranty to the public of the land marked as a street for a public highway. R. S. 1831, p. 530. This title in the public is identical with the right the public has in the public highways through the country. The town or city being the agent of the public with the same duties over the street that supervisors have over highways. *Conner* v. *New Albany*, 1 Blackf. 43 ; S. C., 1 Blackf. 88. These rights may be lost by adverse possession or non-user as any other interest in real estate may, held by an individual. As the grant by recording the plat is in the nature of a warranty to the public, a mere non-user, if the owner of the land do not obstruct, may not create such an adverse possession as to cause the statute to run, but where the owner ousts the public and holds adversely, the statute runs the same whether the public easement is by grant or prescription." And in support of these positions reference is made to the following authorities: *Jewett* v. *Jewett*, 16 Barb. 150 ; *Smiles* v. *Hastings*, 24 Barb. 44; *White* v. *Crawford*, 10 Mass. 183 ; *Arnold* v. *Stevens*, 24 Pick. 106.

We have examined the above cases, and in our opinion they have no application to the present case. The first three cases cited involved the question of whether a right of way over the land of another created by deed was destroyed by non-user, and it was held that the doctrine of extinction by disuse only applied to rights created by use, and not to servitudes or easements created by deed. The question involved in the case last cited was, whether the occupation and cultivation of the surface of land by the owner for forty years would extinguish a right created by deed to dig ore in such land, and it was held that a mere neglect for forty years to exercise the right to dig ore, where it was created by deed, did not impair such right, and that the occupation and cultivation of such land by the owner was consistent with the right in a third person to dig ore, and that such possession was not adverse to the person who had the right to mine and dig ore in such land. All these cases relate to

private easements created by deed, and can have no applica-
tion to a case like the present, where the question is, whether
the rights of the public in a street in a city can be impaired
or destroyed by the non-user of the public of a part of such
street and its use and occupation by an adjoining land-owner.
In other words, whether the rights of a municipality or of
the public may be lost by non-user, or adverse possession.
The question is very fully considered by Dillon on Munici-
pal Corporations. Sections 528 and 533 are as follows:

"Sec. 528. Concerning rights and remedies with respect
to streets and public places, an interesting topic remains on
which the cases are not agreed, and that is, whether the
rights of the municipality or of the public may be lost by
non-user, or adverse possession. There may be instances
where the non-user has continued so long, and private
rights have grown up of such a nature as to amount to an
equitable estoppel, or an estoppel *in pais*, on the public,
which the courts will enforce upon principles of justice; but
such cases are exceptionable in their character, and it would
perhaps be going too far to say that the courts have dis-
tinctly established such a principle. The state of the law,
aside from statutory enactment, can best be exhibited by
referring to the leading adjudications."

"Sec. 533. Upon consideration, it will, perhaps, appear
that the following view is correct: Municipal corporations,
as we have seen, have, in some respects, a double character
—one public, the other, by way of distinction, private. As
respects property not held for public use, or upon public
trusts, and as respects contracts and rights of a private
nature, there is no reason why such corporations should
not fall within limitation statutes, and be affected by them.
For example, in an action on contract or for tort, a munici-
pal corporation may plead or have pleaded against it the stat-
ute of limitations. But such a corporation does not own
and cannot alien public streets or places, and no laches on
its part or on that of its officers can defeat the right of the
public thereto, yet there may grow up, in consequence, pri-

vate rights of more persuasive force in the particular case than those of the public. It will, perhaps, be found, that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine, that as respects public rights, municipal corporations are within ·ordinary limitation statutes. It is unsafe to recognize such a principle.

"But there is no danger in recognizing the principle of an estoppel *in pais* as applicable to such cases, as this leaves the courts to decide the question, not by the mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as right and justice may require."

In the notes to sections 528 to 534 of Judge Dillon on Municipal Corporations, will be found a review of and reference to a large number of cases having a bearing upon the ·question under examination. We have examined the most ·of the cases cited and find that they fully support the principles enunciated by the learned author in the passages above ·quoted. We do not deem it necessary to cite such cases here, as we presume nearly every attorney has such work in his office.

The case of *Lane* v. *Kennedy*, 13 Ohio St. 42, is much in point in the present case. In that case, a street had been laid out and marked four rods wide, and had been opened and used a part of its width. The plaintiff placed his fence upon the part of the street which had not been opened and used by the public, and occupied that portion of the street inclosed by the fence for eighteen years. The defendant as supervisor removed the fence, and for this the plaintiff sued him in trespass. The plaintiff claimed that the public had lost its right to that portion of the street which he had inclosed and occupied, and that his right had become perfect and complete to such portion. The court draws with great clearness the distinction between an abandonment by

the public of an entire street, and the occupation by a pri-
vate individual of a portion of a street not used by the pub-
lic.   The court say:

" The question is one of much practical importance in this
State.   The capacities of its streets and public highways,.
whether prescribed by statute or established by the proprie-
tors of towns or embryo cities, were fixed with regard to
the future rather than the present exigencies of the commu-
nities in which they are located.   At first, a mere trace
would have sufficed for all the travel where, in process of
time, an avenue is scarcely adequate to accommodate all
who, for business or pleasure, may desire to traverse it.

" The public have a mere easement—a mere right of tran-
sit over it.  And if the facilities are ample for the time, no one
feels specially interested in seeing that the lines of the road
have not been partially encroached upon by an adjoining
proprietor, who, after all, owns the land subject to the ease-
ment.   Public opinion would scarcely sustain a supervisor
who should require the removal of a fence, which encroaches,
slightly upon the highway, if ample space is still left for all
travellers.

" Unlike the case in 5 Ohio St. Rep. 594, there was noth-
ing in the character of the improvement, which indicated an
intention to permanently appropriate the land.   It was a
mere .fence; and, as the bill of exceptions informs us, a
worm fence and crooked at that.   He carefully avoided
inclosing any part of the road actually used by the public.,
He infringed no right which was then enjoyed or apparently
desired.   Nothing.was done to excite the apprehension of
the public or to call for its protest.   We hear of no declara-
tions, and all his acts were consistent with a temporary occu-
pancy, by the permission or the mere sufferance of the pub-
lic, till the land should be required for its use.  In *Kirk* v. *Smith*,.
9 Wheat. 288, MARSHALL, C. J., says, ' it would shock that
sense of right, which must be felt equally by legislators.
and by judges, if a possession, which was permissive and.

entirely consistent with the title of another, should silently bar that title.'

"The circumstances do not show that the plaintiff, in placing his fence up to the travelled part of the street, thereby designed or intended to withhold the part enclosed from the public use, should it ever be required, and we are not at liberty to presume it. Fraud and intentional wrong are never presumed, but must be proved. Where the circumstances surrounding the possession, are entirely reconcilable with a continued recognition of the ultimate right of the public, the possession cannot well be said to be adverse in any just sense of that term.

"In *Fox* v. *Hart*, 11 Ohio, 414, it was held that a partial encroachment upon a travelled highway by an adjacent owner, though continued for eighteen years, did not work a forfeiture, as for *non user*, of the part so encroached upon, and that there was ' nothing to authorize the presumption, that any portion of it had been abandoned, or would not be opened, as soon as the public convenience should require.'

"It must be borne in mind that, in the case at bar, the road was not closed up and the public thereby excluded from any use of the street. In such case, the entire exclusion of the public would doubtless be such an ouster or disseizin as would require a suit to be brought within the statutory period, upon the principles settled in *Lessee of the City of Cincinnati* v. *The First Presbyterian Church*, 8 Ohio Rep. 298.

"Nor is it like the case of *The City of Cincinnati* v. *Evans,* 5 Ohio St. 594, where the purpose of the possession and intended permanency, were indicated by the erection within the bounds of the street, of the front of a large and costly warehouse. The erection of such a building, in such a place, was ample notice to the city authorities that he thereby intended a permanent appropriation to his private and individual benefit of a portion of the public easement, and called for immediate and effective measures upon their part, to pre-

vent it. The case was, in this view of it, rightly determined; but as will be seen by a reference to the facts therein stated, it might with equal, if not greater propriety, have been placed upon the ground of an estoppel *in pais* on the part of the city authorities; the building having been located by the city surveyor and upon lines previously established and built upon."

Where the lines of a street have been practically established by the occupancy and improvements of the lots bordering upon it, and the city authorities have recognized the correctness of the lines so established by permitting the owners to so occupy and improve their property, and have acquiesced in it for a considerable length of time, and to such an extent that to change the lines would work great wrong to the owners and disturb long established lines and possession, the city or public authorities would undoubtedly be estopped from disturbing the lines so practically established, although an accurate survey should show that they were wrong according to the plat, and that the lots as occupied extended into the street as originally established. But it does not appear, in the case under examination, that the owners or occupants of any other lot on the line of the street, upon which the lot in question was situated, had extended it so as to occupy any portion of the street. It only appears that the city authorities had simply permitted the occupant of the lot in question to occupy a small portion of the street not then needed by the public.

In our opinion, the inclosure and occupation of the five feet of the street by Brooks and those under whom he claims did not destroy the rights of the public in such strip of ground and vest the title thereto in him or those through whom he derived his title.

We are also of opinion that the instructions asked by the appellant and refused by the court were correctly refused, as they involved the same propositions of law as those we have been considering.

We think the court committed no error in excluding the

Hathaway *v.* The Toledo, etc., R. W. Co.

evidence complained of. The willingness of Riding to pay if he had not been sued did not deprive him of the right to set up a defence when he was sued. It does not appear from the record that any portion of the evidence of Mr. Minor was objected to and excluded. The exclusion of a question asked of this witness is assigned as a reason for a new trial, but the bill of exceptions does not show that any objection was made to any question asked of Minor, or that any of his evidence was excluded.

There is no error in the record.

The judgment is affirmed, with costs.

PETTIT, J., dissents.