Jones *et al. v.* Hathaway *et al.*

No. 6751.

### JONES ET AL. *v.* HATHAWAY ET AL.

PROMISSORY NOTE.—*Pleading.—Answer or Counter-Claim.—Duplicity.* — The court will determine from the substance of a pleading, and not from its name, whether it is an answer or a counter-claim; and if it states facts arising out of or connected with the plaintiff's cause of action, and demands affirmative relief, it will be considered as a counter-claim, even though called an answer. Duplicity in such a pleading, if it exist, can not be reached by a demurrer.

SAME.—*False and Fraudulent Representations.—Failure of Consideration.— Rescission.*—Where, in a suit on a note, the answer is that the note was given for the rent of a farm leased by the makers from the payees of the note for one season, for the purpose of raising a corn crop thereon, and that the inducement to the execution of the note was the representations of the payees, that the farm was not subject to overflow, and never had been overflowed; and it was alleged, that the representations were false and fraudulent, and were at the time known so to be by the payees of the note, that the makers thereof relied on such representations and were thereby induced to execute the note and to put the farm in corn, that in August, 1875, and before the corn crop had matured, the entire crop was drowned out, washed away and destroyed by the overflow of the farm, and that, immediately after the overflow, the makers surrendered the farm to the payees of the note, who took possession thereof. On demurrer for the want of sufficient facts;

*Held*, that the answer stated a total failure of consideration of the note in suit, and a good defence in bar of the action thereon.

*Held*, also, that the representations, alleged to be false and fraudulent, were in relation to existing matters of fact, and were such as the makers of the note had a right to rely upon, and their truth was sufficiently negatived.

*Held*, also, that the makers of the note were under no obligations to examine or inquire into the truth or falsity of the representations, but they had a right to rely upon the plaintiffs' statements of existing facts, without any inquiry as to their truth.

PRACTICE.—*Failure to Answer or Reply.— Venire de Novo.—Supreme Court.* —The plaintiff's failure to reply to an answer, or to answer a counter-claim, will not vitiate or avoid the verdict, or afford any cause for the issue of a *venire de novo*. In such case, the Supreme Court considers the record, as if an answer or reply in denial had been filed.

SAME.—*Instructions.*—Where instructions are objected to, solely upon the ground that they do not fully state the law on all the issues in the cause,

Jones *et al. v.* Hathaway *et al.*

it is incumbent on the objecting party to ask the trial court for additional instructions covering the omitted points; for, in such case, he can not, by merely excepting to the instructions given, get such an error into the record as would be available to him in the Supreme Court.

From the Monroe Circuit Court.

*J. W. Buskirk* and *H. C. Duncan*, for appellants.
*C. F. McNutt* and *B. E. Rhoads*, for appellees.

Howk, J.—In this action, the appellants, William Jones and Dawson Blackmore, sued the appellees, Joseph V. Hathaway, Thomas Fullerton, Joseph H. Kirby and William M. A. Kirby, upon a promissory note for eight hundred and forty dollars, dated December 1st, 1874, executed by said appellees, and payable to said appellants on the 25th day of December, 1875. The appellees answered affirmatively in two paragraphs, and also filed a third paragraph, by way of counter-claim or cross complaint, against the said appellants, and making defendants thereto certain other persons, as the heirs at law of John Jones, deceased, who are appellants in this court. The cause, having been put at issue, was tried by a jury, and a verdict was returned for the appellees, on their cross complaint, assessing their damages in the sum of one dollar, and also finding in their favor on the plaintiffs' complaint. Over the appellants' motions for a *venire de novo* and for a new trial, and their exceptions saved, the court rendered judgment against them on the verdict, in favor of the appellees.

Errors have been assigned by the appellants, in this court, as follows:

1. The appellees' cross complaint does not state facts sufficient to constitute a cause of action against the appellants;

2. The circuit court erred in overruling their demurrer to the first paragraph of the appellees' answer;

3. The court erred in overruling their demurrer to the second paragraph of the appellees' answer;

4. The court erred in overruling their motion for a *venire de novo;*

5. The court erred in overruling their motion for a new trial; and,

6. The court erred in overruling their motion in arrest of judgment.

We will consider and decide the several questions presented by, and arising under, these alleged errors, in the order of their assignment.

1. The pleading called a "cross complaint" is, strictly speaking, under the code, a counter-claim. It states matters arising out of and connected with the plaintiffs' cause of action, which might have been the subject of an action in favor of the appellees, the defendants below, and which tended to reduce the plaintiffs' claim. This brings the appellees' third paragraph within the statutory definition of a counter-claim, as given in section 59 of the code, 2 R. S. 1876, p. 63. The counter-claim is the complaint of the defendants in the original action. It must state facts sufficient to constitute a cause of action against the persons made defendants thereto. The objection to a counter-claim, that it does not state facts sufficient to constitute a cause of action, is not waived by the failure to demur thereto; but this objection may be made in this court for the first time, by a proper assignment of error, as the appellants have done in this case.

In their counter-claim or cross-complaint, the appellees admitted the execution of the note in suit, but said that the plaintiffs ought not to recover thereon; that, instead thereof, they, the appellees, ought to recover of the appellants, for that, on December 1st, 1874, after protracted preliminary negotiations, they and the plaintiffs entered into a contract of lease, a copy of which was therewith filed and made part thereof; by the terms whereof the plaintiffs leased unto the appellées the real estate described in said contract, and

known as the "Jones' Farm," on the Wabash and Erie Canal, in Fairplay township, Greene county, Indiana, and supposed to contain 140 acres of cleared land, for the crop season of 1875, which said land was to be, and was by the appellees, cultivated in corn; that, in consideration of the use of said land for said purpose, the appellees agreed to pay, on the 25th day of December, 1875, the sum of $840 rental, and that, in pursuance of said contract and as a part thereof, and without any other consideration therefor, they executed to the plaintiffs the note in suit; that at the time of making said contract and executing said lease and note, and theretofore, they were wholly unacquainted with said land; that they had never seen the same, but relied wholly upon the statements and representations made by the plaintiffs, and particularly by the plaintiff Jones, who acted for himself and others in interest, and as their agent; that said lands lay in what was known as the "White river bottoms"; that the plaintiff Jones, had all his life, as had the other plaintiff, been acquainted with said land and its incidents, and well knew that the appellees, who then and since had resided in Monroe county, thirty miles distant from said land, were wholly ignorant of the topography of said land, and whether it was or was not liable to overflow by the waters of White river in times of freshets; that, while so negotiating said contract, the appellees represented to the plaintiffs and to the said William Jones, that they would not rent said land if it was subject to overflow from the waters of said river; whereupon, well knowing the truth to be that the waters of said river, in times of freshets therein, did overflow said lands, and that, both in and out of the crop season, the said river had often overflowed said lands to a depth and extent sufficient to destroy growing crops, and well knowing that the appellees were ignorant of the truth of the premises, and that they were relying upon the good faith and truth of the appellants' statements, and particularly of

the statements of said William Jones, who made the negotiations in their behalf, and for the fraudulent purpose of inducing the appellees to enter into said contract, the said plaintiffs falsely and fraudulently represented to the appellees that said lands were not subject to overflow, that they never had overflowed, and that there was no danger of such overflow from said river or otherwise ; that, in ignorance of the real facts and relying, as they might, upon the said representations, and thereby induced thereto, the appellees entered into said contract and executed the said note and lease as evidence thereof ; that afterwards, in the spring of 1875, in pursuance of said contract the appellees took possession of said land and prepared it for, and put in it, a corn crop, in doing which, and in and about the cultivation thereof, they expended labor, money and time, of the value and to the amount of fifteen hundred dollars ; that after they had completed the cultivation of said crop, and when it was beginning to mature, to wit, in August, 1875, there came a rise in said river, by which its banks were overflowed, and the said lands were inundated to the depth of from ten to fifteen feet, whereby the entire crop growing, cultivated and raised thereon by the appellees was utterly drowned out, washed away and destroyed, to the appellees' damage in said sum of $1,500.

And the appellees alleged that theretofore, from time to time, during all seasons of the year, the said lands had been in like manner overflowed, as the plaintiffs well knew, and, so well knew that there was danger of said lands being overflowed, when, in manner aforesaid, they represented the contrary. In consideration of said premises, the appellees prayed judgment that the plaintiffs take nothing by their complaint herein ; and, upon their counter-claim and cross complaint, the appellees prayed judgment for fifteen hundred dollars and for other proper relief, and they asked that certain named persons, the heirs at law of John Jones, de-

ceased, should be made defendants to, and required to answer, their said counter-claim.

In the first paragraph of their answer, the appellees pleaded, in bar of the plaintiffs' action, substantially the same facts which they stated in the third paragraph, by way of counter-claim or cross complaint; and so, in the second paragraph, the same facts in substance were again pleaded as a cross complaint. These facts were pleaded in the first paragraph as showing that the consideration of the note in suit had wholly failed; while, in the second paragraph, upon the same facts, the appellees prayed judgment for the cancellation of the lease and note, and declaring them void.

The appellants' learned counsel have presented in argument substantially the same objections to each of the three paragraphs of the appellees' pleadings, and the course of their argument has made it necessary for us to consider and pass upon these objections as applied to each and all of said paragraphs. The first objection urged by counsel, as to each of said paragraphs, is its duplicity. It is claimed that each paragraph set out or counted upon both failure of consideration and fraud. In so far as the first paragraph is concerned, which was, in the strictest sense, an answer only to the plaintiffs' cause of action, it is certain that this first objection to its sufficiency was not reached by the plaintiffs' demurrer thereto for the want of facts. An objection to an answer proper, based on alleged duplicity therein, can not be reached by a demurrer for the want of sufficient facts. *Spencer* v. *Chrisman*, 15 Ind. 215; *Rielay* v. *Whitcher*, 18 Ind. 458; *Denman* v. *McMahin*, 37 Ind. 241.

The second paragraph of the appellees' pleading is not, in any proper sense, an answer to the plaintiffs' complaint. It was called a cross complaint, but its proper name, under the code, was a counter-claim. It closed with a prayer for affirmative relief, that the court would, in and by its judgment, cancel the lease and note and declare them void. It

stated matters connected with the plaintiffs' cause of action, which might have been the subject of an action in favor of the appellees, and against both the plaintiffs. It came strictly within the statutory definition of a counter-claim, and therefore the case of *Gabe* v. *McGinnis*, 55 Ind. 372, cited and relied upon by the plaintiffs' counsel, is not in point.

It is also insisted by the appellants' counsel, that the first paragraph of answer was bad on the demurrer thereto for the want of facts, because, while it attempted to answer the whole cause of action by showing an entire failure of the consideration of the note in suit, its allegations of fact showed, at most, only a partial failure of such consideration. The argument of counsel on this point proceeds upon an assumption which, it seems to us, is not authorized by the case as made by the pleading demurred to; and that is, there could be no total failure of the consideration of the note sued on, by the destruction of the corn crop by the overflow of the leased lands in August, 1875, because other crops might have been raised and harvested on said lands before such overflow, and it did not appear that the appellees had leased the lands for the purpose of raising a corn crop thereon. The lease was made a part of the answer, and contained this stipulation on the part of the appellees: "And the party of the second part bind themselves to have the corn gathered by the 1st day of December, 1875, and, on said 1st day of December, to deliver to the party of the first part the field with the stalks therein; no corn to be cut nor pulled with the husks on." This stipulation shows very clearly, as it seems to us, that the lands were leased by the appellees for the purpose of raising a corn crop thereon; and it was averred in the answer that the appellees put in said lands a corn crop, which was utterly drowned out, washed away and destroyed by the overflow of said lands, in August, 1875; and "that defendants immediately thereafter surrendered the said premises to the

said Jones, who at once took possession thereof and began making repairs and improvements thereon." This last averment was equivalent to an allegation of the rescission of the entire contract by mutual consent, and it made the first paragraph a good answer in bar of the plaintiffs' cause of action. This objection to the sufficiency of the answer, therefore, was not well taken.

There can be no doubt, we think, that the alleged fraud of the appellants, in the letting of the lands and in the procurement of the note in suit, is well pleaded both in the answer and in the counter-claims. The false and fraudulent representations of the appellants, stated by the appellees in their answer and counter-claims, were as to alleged existing facts, namely, that the demised lands were not subject to overflow, and never had been overflowed. The representations were as to matters of fact, on which the appellees had the right to rely; and their truth was negatived in clear and explicit terms. Certainly, the appellees were under no obligation to go upon the demised lands and examine or inquire into the truth or falsity of the appellants' representations. *Taylor* v. *Fletcher*, 15 Ind. 80. Upon this point, in *Mead* v. *Bunn*, 32 N. Y. 275, the court said that it is a "mistaken assumption, that a false representation by one of the parties to a contract puts the other *on inquiry* as to its truth. Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth of which, the other party to the contract, with full means of knowledge, has deliberately pledged his faith."

In *Frenzel* v. *Miller*, 37 Ind. 1, a different doctrine was declared by this court on the subject now under consideration. As applicable to the case at bar, this court there said: "If a representation be made of a matter material to the

contract, which turns out to be untrue, to the damage of the party to whom such representation was made, and who relied on the same as true, such representation will have the force and effect of positive fraud in a proceeding to rescind the contract, or in an action for, or defence founded on, the fraud, whether the falsity of the representation was known to the party making it or not, on the ground that he who makes a representation as true, without knowing it to be true, is guilty of gross negligence and reckless conduct." *Krewson* v. *Cloud*, 45 Ind. 273.

In their answer and counter-claims in the case now before us, the appellees expressly alleged that the appellants had full knowledge of the falsity of their representations, at the time they were made. Under these allegations, the appellants were guilty of positive fraud.

But, conceding "that there are sufficient allegations of fraud," the appellants' counsel say that "the damages complained of as a defence to the note are entirely too remote." This question is presented, if presented at all, only by the demurrer to the answer; and, if the allegations of the answer are true, and the demurrer admits their truth, the damages sustained by the appellees were the direct result of the false and fraudulent representations of the appellants. For it was alleged by the appellees that these representations were the inducement to their contract with the appellants, by reason of which they, the appellees, lost their labor, time and money invested in the cultivation of the lands, and the entire crop growing thereon. It can not be correctly said, we think, that the damages complained of as a defence to the note in suit are too remote. The question as to the proper measure of damages, in such a case as this, is also discussed by the appellants' counsel, but we do not think that this question is presented by the demurrers to the appellees' pleadings. The court did not err, in our opinion,

in overruling the demurrers to the answer and counter-claims of the appellees. *Brooks* v. *Riding*, 46 Ind. 15.

In discussing the alleged error of the trial court in overruling the motion for a *venire de novo*, the first point made by the appellants' counsel is, that, as some of the parties to the record failed to reply to or answer the appellees' pleadings, there was, as to them, a trial without an issue. This omission to complete the issues would not vitiate or avoid the verdict, nor prejudice the rights of any of the parties in any respect; for, in such cases, this court has often decided that it would consider the record as if an answer or reply in denial had been filed. *Casad* v. *Holdridge*, 50 Ind. 529; *Purdue* v. *Stevenson*, 54 Ind. 161.

The form of the verdict was as follows: "We, the jury, find for the defendants on their cross complaint, and assess their damages at the sum of one dollar, and in favor of the defendants on the plaintiffs' complaint." It is claimed that this verdict is vague and indefinite and does not find on all the issues in the case; and that, therefore, the motion for a *venire de novo* ought to have been sustained. It seems to us, however, that the verdict is not open to these objections. It was a general verdict for the appellees, the defendants below, both on their counter-claims and on the plaintiffs' complaint, and was, we think, sufficiently certain and specific. No error was committed by the court in overruling either the motion for a *venire de novo* or the motion in arrest of judgment.

We come now to the consideration of the questions discussed by the appellants' counsel and arising under the alleged error of the circuit court in overruling the motion for a new trial. These questions relate chiefly to the instructions of the court of its own motion, and especially to the action of the court in giving certain instructions, asked by the appellees, to the jury trying the cause. In regard to the instructions given by the court of its own motion, we are

of the opinion that they state the law correctly, applicable to the case, as far as they go. Possibly, they were not so full, clear and explicit as they might have been; and this we understand to be the objection urged against them by the appellants' counsel. This objection, however, does not constitute an available error for the reversal of the judgment. Where the instructions given do not contain any erroneous statement of the law, and are objected to upon the ground that they do not fully state the law upon all the issues in the cause; it is incumbent on the objecting party, if he desires to make his objections available in this court, to ask the trial court for additional instructions covering the omitted points. If the party fails, in such a case, to ask the court for such instructions, he can not, by merely excepting to the instructions given, get such an error into the record as will be available to him on appeal, in this court.

The first instruction given by the court, at the appellees' request, was as follows: "A misrepresentation, to be fraudulent, must be as to a material fact, or to material facts, must be false, must be relied on by the one to whom it is made, must constitute an inducement to enter into a transaction, must work injury or result directly in damages to the party relying thereon, and the party to whom it is made must have a right to rely thereon. If all these circumstances concur, there is fraud, and the party thus injured is entitled to relief."

It seems to us that this instruction contains a fair statement of the law on the subject thereof, and that it was applicable to this case, as the same was presented by the pleadings and evidence. We do not understand that the appellants' counsel object to this instruction on account of anything contained therein; but they insist, that it was defective, because it did not inform the jury that "before the party can plead fraud, his opponent must be placed *in statu quo.*" This objection to the instruction does not seem to us

to be well taken. Doubtless, if the appellees had sought no other relief in this case than the rescission of the note and lease, it might have been incumbent on them to show that the parties could be placed substantially *in statu quo*, upon such rescission. *Harper* v. *Terry*, 70 Ind. 264. But, without regard to rescission, the appellees had the right to assert their claim for damages ; and this they did assert in their counter-claim or cross complaint. The instruction quoted certainly contained a correct statement of the law, as far as it went ; and if the appellants wished the jury instructed in regard to the question of *in statu quo*, as affecting the right of rescission, they should have asked the court for such an instruction.

The only objection made by the appellants' counsel to the third instruction, given by the court at the appellees' request, is in effect that it was erroneous, because it did not inform the jury that the appellees could not recover, on account of the alleged false and fraudulent representations, unless it appeared that they "could not, by reasonable diligence, have discovered their falsity." This objection can not be sustained. The appellees had the right to rely upon the appellants' representations, and were under no obligation to inquire into their truth or falsity.

In the fourth instruction given at the appellees' request, the facts alleged in the answer and counter-claim were stated hypothetically, and the jury were told that, if they found such facts to be true, they should find for the appellees to the extent of the damages they had thereby sustained. There was no error, we think, in this instruction.

The evidence fairly sustains the verdict, and the motion for a new trial was correctly overruled.

We find no error in the record which would authorize the reversal of the judgment below.

The judgment is affirmed, at the appellants' costs.