Meloy, Appellant, vs. PETERSON, Respondent.

*April 16 — May 3, 1898.*

*Fraudulent representation as to quantity of land: Court and jury.*

In an action to recover a part of the price paid to defendant for a farm, on the ground that the plaintiff was induced to buy and pay for the same as containing 110 acres, at a certain price per acre, by the false and fraudulent representations of the defendant that it contained that number of acres, *held*, that there was sufficient evidence of the fraud alleged to require the submission of the case to a jury; and that the acceptance of a deed, drawn in the precise terms of the contract, without knowledge of the facts, did not purge the transaction of fraud. *Ohlert v. Alderson*, 86 Wis. 433, distinguished.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

The complaint in this action alleges, in effect, that defendant was the owner of a certain tract of land; that in February, 1895, the plaintiff entered into an agreement with her to purchase the same for $48 per acre; that the defendant, with intent to deceive and defraud the plaintiff, falsely and fraudulently represented that the tract contained 110 acres, well knowing that it contained less than 103 acres; that, pursuant to this agreement, a deed of said land was

Meloy vs. Peterson.

made, and plaintiff then provided for the payment to the defendant of the sum of $5,280, being at the rate of $48 per acre for 110 acres; that the description in the deed was imperfect, so that it was impossible to ascertain therefrom the number of acres embraced therein; that plaintiff relied upon the representations made by defendant; and that, in fact, the said tract contained only 102½ acres of land; and she demands judgment for $360. The answer admits the agreement to purchase, the making of the deed, and alleges that the price agreed to be paid for the land was the sum of $5,280, for whatever land was so conveyed, and not otherwise, and denies the other allegations of the complaint. The action was brought to trial before a jury, and, at the close of plaintiff's testimony, the court granted a nonsuit. The plaintiff appeals from the judgment for costs.

For the appellant there was a brief by *Bashford, Aylward & Spensley*, and oral argument by *R. M. Bashford*.

*Gilbert E. Roe*, for the respondent, argued that the contract was for the sale of a particular farm, the area of which might easily have been ascertained by the plaintiff. *Hackbarth v. Wollner*, 88 Wis. 476; *Docter v. Furch*, 76 id. 153; *S. C.* 91 id. 473; *Daly v. Brennan*, 87 id. 36. The executory contract to convey was performed and became merged in and superseded by the deed. *Clifton v. Jackson Iron Co.* 74 Mich. 183; *Slocum v. Bracy*, 55 Minn. 249; *Ohlert v. Alderson*, 86 Wis. 433.

BARDEEN, J. The only question for our consideration in this case is whether, under the proof offered by plaintiff, the court ought to have submitted the case to the jury. The court seems to have proceeded on the theory that the sale was of a known farm, of a "lump quantity," for a definite gross sum. If it was, then the court was right. If not, then the case should have been submitted to the jury.

The sale was negotiated through defendant's agent, Main.

As a witness for plaintiff, he testified that he saw the defendant about the farm; that she told him she had 110 acres, and had got to have $48 per acre for it. Main saw plaintiff's husband, who was acting as her agent, and told him that he had the farm for sale,— 110 acres, at $48 per·acre. Plaintiff and her husband went to look at the place, and, while there, a justice was called in, and a contract was written out, signed, and delivered. With reference to the contract, Mr. Main testified: "It called for 110 acres of land, to be conveyed, at $48 per acre;" and again: "And the consideration we put in the contract was 110 acres, at $48 per acre,—$5,280." Mr. Meloy testified: "The contract said 110 acres, both in writing and figures, and at $48 an acre, and the amount $5,280;" and that it was suggested by both defendant and Mr. Main to put in the contract that there was 110 acres in the farm. Mr. Scholtz, the justice who drew the contract, said: "The contract claimed that there was 110 acres being sold, at $48 an acre, amounting to $5,280." There can be no doubt, from this testimony, that the contract between the parties called for 110 acres of land, at $48 per acre. It seems that, some time after the deal had been closed, Mr. Main had some talk with defendant; and, after the trouble had commenced, she told him she knew there was not 110 acres in the farm; but she would not sell it for any less, because they had bought for that amount. While the contract was being drawn, Meloy had the impression that the purchase price was $4,800, having made a mistake in figuring. He then said to defendant, "How do I know whether we are getting 110 acres or not?" And she said there was 110 acres, and "they bought it for 110 acres." All the witnesses agree that the quantity of land was talked over, and the price per acre was put in the contract.

A plat of the land drawn from the description in the deed shows that it was of irregular shape, and that it would be quite impossible from a mere inspection of the farm for an

ordinary person to form any estimate of the number of acres it contained. The mere inspection of the land could not, therefore, have put plaintiff on her guard as to the quantity of land conveyed by the deed.

There can be little doubt, under this testimony, but that defendant made express representations as to the quantity of land sold. The fact that she told Mr. Main subsequently that she knew there was not 110 acres of land in the tract is a circumstance tending to show fraud. Construing the testimony, as we must, most favorably to plaintiff, we have then this state of facts: An express representation that there was 110 acres of this land; reliance by plaintiff upon such representation; proof that there was only about 103 acres; knowledge by defendant that such representation was false. Unless it can be said that the contract so made became merged in the deed, and beyond which the plaintiff cannot go, it is evident the plaintiff would be entitled to submit her case to the jury.

It will be observed that the complaint charges that the representations as to the quantity of land were made with the *fraudulent intent* to induce plaintiff to purchase the same and pay the price agreed. The proof alluded to tends to support these allegations. Unlike the case of *Ohlert v. Alderson,* 86 Wis. 433, the parol evidence offered was not offered here to dispute the contract between the parties, or to show a parol agreement antecedent to the written contract, but rather to establish the contract as originally made. In that case no question of fraud was raised, and there was no claim that the contract or the deed contained any mention of the quantity of land conveyed or the price per acre. Here the contract as originally made is asserted; but it is claimed that plaintiff was induced to make this contract by the false representations that there was 110 acres of this land, and, relying upon them, she accepted the deed, supposing that it conveyed that number of acres. It is a fair inference from,

although not clearly set forth in, the evidence, that plaintiff did not know she was not getting the full 110 acres of land until some time after the deed was executed. The deed itself does not mention the number of acres conveyed; and it is impossible for the ordinary layman to compute the amount from the description given. Generally speaking, the delivery and acceptance of a conveyance cancels and extinguishes the prior executory agreement, as is substantially held in *Ohlert v. Alderson, supra; Smith v. Evans,* 6 Bin. 102; *Williams v. Hathaway,* 19 Pick. 387; *Slocum v. Bracy,* 55 Minn. 249. But this rule is subject to important exceptions. In *Witbeck v. Waine,* 16 N. Y. 532, it was held that the execution and delivery of a deed pursuant to an executory contract for the sale of land did not extinguish a provision therein for an increase or rebate of the purchase price in proportion to the excess or deficiency which might exist in the land, although the deed was silent on the subject. So, in another case it is said that the conveyance did not extinguish a stipulation in the contract that the vendor should retain possession of the premises beyond the period when the conveyance was made. *Morris v. Whitcher,* 20 N. Y. 41. These exceptions are mentioned to show that the rule is not entirely universal.

If it be admitted that the evidence shows that the plaintiff was induced to make the contract to pay for 110 acres of land upon the false representation that there was that number of acres, and that she did not know that it was short when she took her deed, this element of misrepresentation survived the delivery of the deed, and remains as potential to her as though no deed had been given. The alleged fraud consists in the representation which induced her to contract for, and thereafter to pay for, more land than she actually received. *Brooks v. Riding,* 46 Ind. 15, is a case clearly in point. Plaintiff represented that a lot he desired to sell was fifty-five feet wide. Defendant did not know the width of

the lot, although he had examined it, but made the purchase in reliance upon such representation. It was held that he might defend as to so much of the purchase price as the evidence showed there was a shortage in the lot. This principle is recognized, although relief was denied on the facts, in *Weart v. Rose*, 16 N. J. Eq. 290, and *Ketchum v. Stout*, 20 Ohio, 453.

Suppose, in this case, no deed had been given, and defendant was here seeking to enforce the contract. Could it be claimed for an instant that defendant could compel specific performance, if it were shown, as is here claimed, that the contract was induced by false representations? How is the situation altered when plaintiff accepts a conveyance of the land she has agreed to buy, laboring under the same delusion as when she made the contract. If it was fraudulent to represent that there was more land than there really was, does the giving of a deed according to the precise terms of the contract purge the transaction of the fraud? Just why or how the act of giving the deed possesses any such alchemistic power is not easily seen. The original taint of fraud surrounds and possesses the deal through all its different stages, until the defendant, with *knowledge* of the situation, does something that will estop her from claiming the fraud. If the transaction reaches final culmination before any discovery is made, certainly she is not robbed of her remedy. Under well-recognized rules of law, she might have rescinded the contract, or sought redress for the damages sustained. She has chosen the latter remedy. The taint in the original contract inheres in and permeates the whole transaction. Had she accepted the deed with full knowledge, no such question could arise. Under all the canons of the law, her remedy would have been gone. So long as we can say that the evidence tends to prove that the purchase was by the acre, and not of a given tract or known farm; that plaintiff was induced to make her contract to pay for 110 acres of

land by the false representation of the defendant; that the
quantity was short, the plaintiff supposing that she was get-
ting in the deed the full amount contracted for,— the mere
making and delivery of the deed will not purge the transac-
tion of its injurious effects.   Plaintiff is not disputing either
the contract or the deed.   She is simply attacking the *bona
fides* of the representations which induced her to pay for
more land than she really got.   Under these circumstances,
we think there was sufficient evidence in the case to warrant
the court, under proper instructions, in submitting the case
to the jury.

*By the Court.*— The judgment of the circuit court is re-
versed. and the cause remanded for a new trial.