## DAVIS v. THE CITY OF CLINTON.

1. **Highway:** BY PRESCRIPTION: WIDTH OF. The court cannot say, as a matter of law, that a highway acquired by prescription is of any particular width, beyond such portion as is actually used by the public. The width to which the public is entitled is a question for the jury in each case, and is not necessarily the full width of sixty-six feet.

2. ————: DEDICATION: EVIDENCE: WIDTH. The facts shown by the evidence are not sufficient to constitute a dedication of the highway in question, at the point in dispute, sixty-six feet in width.

3. ————: FORMER ACTION: ESTOPPEL. Where, in a former action in relation to the same subject matter, the pleadings were indefinite and presented several propositions of fact, and the court did not definitely determine the issue now presented, the judgment therein should not be regarded as an estoppel, and cannot affect the city of Clinton, defendant, which was not a party to that action.

*Appeal from Clinton Circuit Court.*

TUESDAY, JUNE 6.

ACTION of *mandamus* to compel the council of the city of Clinton to move or have moved certain obstructions in an alleged public highway. Trial to the court. The relief asked was refused, and the plaintiff appeals.

*Aylett R. Cotton*, for appellant.

*I. Monroe, A. R. McCoy* and *E. S. Baily*, for appellees.

SEEVERS, J.—The pleadings are voluminous. It is deemed unnecessary to state at length the several allegations therein, because we think the case can be satisfactorily disposed of by considering the several grounds upon which counsel for appellant claims the judgment of the Circuit Court to be erroneous. It is conceded the hearing in this court can only be had upon the errors assigned. The material controverted question is, as to the existence of a highway at the place where it is alleged to be obstructed, sixty-six feet wide.

I. It is said the evidence shows the existence of the highway "by prescription, by use by the public, for more than ten years prior to the platting of the Strayer and Davis additions, and as there was no enclosure on the southerly side, the public acquired the right to a highway sixty-six feet wide." As early as 1856 there was a highway over the premises in question. That is to say, there was a road which was used by the public, and it has been continously used since that time. The premises were then outside of the city limits. At that time or shortly thereafter there was a fence on the northerly side of the road, which it will be conceded has been ever since maintained. The travel passed along within a short distance of the fence, not exceeding, we think, ten feet, and continued to pass over substantially the same route up to the trial in the Circuit

Court. On the southerly side of the traveled road there was a tract of uninclosed woodland extending some distance to the Mississippi river. In 1868 one Davis owned the land north, and Strayer that south of the road. In that year, and near the same time, they laid off their respective tracts into lots as additions to the City of Clinton, the corporate limits of which were extended so as to embrace the premises in question. Since the platting of said additions, the highway has been known as Jefferson avenue. If the highway in question is sixty-six feet wide, extending south from the fence aforesaid, then about ten feet of the southerly side of the highway known as Jefferson Avenue is obstructed by a fence, which was erected in 1868, and which has been since that time maintained. The portion of the highway so obstructed never was actually used by the public. No travel at any time passed over it.

Counsel for the appellant insist where the public acquires a highway by prescription or use, the width thereof is sixty-six feet, whether the whole of such width has been used by the public or not. In support of this proposition *Manderschid v. City of Dubuque*, 29 Iowa, 73; *Larkin v. Harris*, 36 Id., 93; *Hobbs v. Lowell*, 19 Pick., 405, and Angel on Highways, section 144, are cited.

A slight examination of these cases will show that they do not sustain the foregoing proposition. For none of them hold that such highway must necessarily be sixty-six feet wide or of any other particular width. We suppose the claim is made that such a highway must be sixty-six feet wide, because if it had been established in pursuance to the statutes in force in 1856 or 1868, it would have been that width, unless a different width was fixed by the authority directing its establishment. Code, of 1851, § 515; Rev., § 820. But we do not think it follows that a right obtained by use must necessarily equal in all respects that which might have been obtained under the statute. Besides this, under the statute a high-

way might be of any width between thirty-three and sixty-six feet.

Counsel for appellees insist the public acquires no greater right than the actual use implies. That is to say the width of the highway cannot be greater than is actually used by the public. In support of the foregoing, *Watrous v. South-worth*, 5 Conn., 304; *Walker v. Caywood*, 31 N. Y., 51; *Epler v. Niman*, 5 Ind., 459, and *Hannum v. Belchertown*, 19 Pick., 311, are cited. The true rule, we think, and which is sustained by the authorities just cited, or some of them, is, that it is a question of fact for the jury to determine under the facts and circumstances. The court cannot, as a matter of law, say that a road acquired by prescription or use is of any particular width beyond such portion as is actually used by the public. That such a highway should not ordinaily be confined to the path, carriage or wagon road used, we can readily conceive, because there should be room for travelers to pass each other. Beyond this, however, we think, it is a question for the jury. From the southerly side of the traveled highway used by the public to the fence, which is claimed to be an obstruction, the distance must be at least twenty feet. It follows from what has been said that, under the established practice of this court, the finding of the court which has the force and effect of a verdict, cannot be disturbed; as we are clearly of the opinion there is evidence upon which the finding can be sustained, that the fence in question did not obstruct the highway, and that the public, by use and prescription, did not acquire the right to a highway sixty-six feet wide at the place where the alleged obstruction exists.

II. It is said " there is proof of the dedication of the road by consent of E. M. Davis when he owned all the lands through which it ran." It is true Davis owned the land on both sides of the road for a short time. But there is no evidence showing a dedication on his

2. ———: dedication: evidence: width.

part during that time. He simply passively permitted the public to do just what it had done before. We are unable to see that any rights were acquired by the public because of the assent of Davis, which were not possessed before.

III. It is said the public acquired a right of way over the land in dispute by the consent, agreement and dedication of Davis and Strayer before and at the time they made the plats of their additions, by agreeing to recognize a highway there sixty-six feet wide, by making and recording the plats, and conveying and selling lots bounded on said highway and street." It will be observed it is not claimed there was a statutory dedication. This question was decided adversely to the plaintiff in *Strayer v. Stone et al.*, 47 Iowa, 333. When Davis and Strayer laid out their additions in 1868 they, between themselves, agreed Jefferson avenue should be sixty-six feet wide. But shortly thereafter, and during the same year, Strayer erected the fence in question which constitutes the obstruction complained of. It is true, he asked the consent of the parties interested, and promised to remove it when he should be called on to do so. The evidence shows he afterward sold the premises to Stone & Angel, and that the latter supposed the fence just mentioned was on the line of the road or street. There is no evidence that the public had knowledge of such agreement, and there is no evidence tending to show the public used the highway to any greater extent than before, or that any greater or additional rights were claimed by the public than before. Of course, the public did not use or travel over the disputed strip of ground in consequence of or after the agreement, because it has been continuously fenced since a short time after the agreement was made, Davis and Strayer may be bound by their acts and declarations, but we cannot see that the public acquired any additional rights or assumed any obligations because of their acts and declarations.

IV. In 1874 E. M. Davis was road supervisor. His dis-

trict embraced Jefferson avenue, and he threatened to re-
move the obstruction aforesaid.    Whereupon,
Shoecraft, Stone & Angel commenced an action
to restrain him from so doing.    Davis pleaded
as a defense to the action that the fences maintained by the
plaintiffs were about ten feet in the highway as it had been
established by the county, and also that distance within the
road agreed upon by Davis and Strayer.    The court found the
allegations of the answer to be true, and dismissed the
plaintiffs' petition on its merits. The plaintiff, in this action,
insists that the finding and judgment just mentioned create
an estoppel, or, that if this be not true, the same is admissi-
ble in evidence, and the existence of the highway and ob-
struction is thereby established.    To this position counsel for
the appellee make several answers.    Among others it is said
the pleading setting up the alleged right and extent of the
obstruction is indefinite and uncertain, the allegation being
that the fence was about ten feet in the highway, and that
the judgment only determined the fence was *about* the dis-
tance aforesaid in the highway, and it is insisted there is evi-
dence tending to show the fence, or a part of it, has, since the
judgment was entered, been moved back some three or four
feet.    We have some difficulty in determining whether the
fence complained of as an obstruction has, in fact, been
moved back or not.    If such is the case, then, we think, the
judgment should not be regarded as an estoppel, because, for
aught we can know, the fence is now on the line of the high-
way, as determined by the court.    In other words, the court
did not find and determine definitely how far the fence en-
croached on the street.    Besides this, the defendant, in the
action referred to, pleaded that the plaintiffs therein were
grantors of Strayer, and he set up that Strayer had, at the
time he laid out his addition, agreed a highway then existed
as now claimed by the plaintiff, and that the fence sought to
be removed was within the limits of the highway, and that

*3. ——:
former ac-
tion: estop-
pel.*

plaintiffs in said action had full knowledge of all said matters when they made the purchase of Strayer. For aught we know, the court proceeded upon this ground. Now, while it may be the grantees of Strayer would be estopped by said decree, we do not think it follows the city, as the representative of the public, would be estopped from litigating the question as to the existence of the highway to the extent now claimed by the plaintiff. The city was not a party to that action, nor is it bound by the agreement of Strayer. A highway, when established in any manner, confers rights and entails responsibilities on the public, who in this action is represented by the city. If it be said Davis as road supervisor represented the public, and therefore, the city is bound by the decree, the reply may be made, the decree was in favor of the public right, and we are unable to see how the plaintiff can avail herself of such decree against the city as representive of the public. Again, it is said, if the pleadings present several propositions of fact, the judgment is not conclusive upon any one, unless it appears from the record, or *aliunde*, that the issue upon which it was rendered was upon that proposition. *Hooker v. Hubbard*, 102 Mass., 230.

V. Stone & Angel were made defendants, and they demurred to the petition, which was overruled and a default entered against them. It is insisted the decision on demurrer became the law of the case, and the plaintiffs entitled to a *mandamus*. The complete answer to this, we think, is that no relief was asked against Stone & Angel. And the ruling on the demurrer and default could in no manner affect the city.

AFFIRMED.