[No. 11514.   Department Two. — September 21, 1886.]

## CRADDOCK G. WATKINS, APPELLANT, *v.* P. C. LYNCH, RESPONDENT.

SCHOOL LANDS — CERTIFICATE OF PURCHASE — PRESUMPTION THAT TITLE HAS VESTED IN STATE. — The issuance of a certificate of purchase of school land is presumptive evidence of the fact that the proper officers have performed every act required of them by law in order to vest in the state the legal title to the land at the time of the issuance of the certificate.

ID. — CERTIFICATE PASSES PRIMA FACIE LEGAL TITLE — CONVEYANCE OF — SUBSEQUENT PATENT INURES TO GRANTEE. — Under the statutes of 1859, the assignee of a certificate of purchase of school lands acquires a *prima facie* legal title thereto, which passes by a quitclaim deed of the land to his grantee; and a patent for the land subsequently issued to the assignee inures to the benefit of the grantee.

ID. — HOLDER OF CERTIFICATE MAY DEDICATE LAND. — The holder of a certificate of purchase of school lands, having the *prima facie* legal title, has power to dedicate the land to public use for the purposes of a highway.

PUBLIC HIGHWAY — ABANDONMENT — ADVERSE POSSESSION — SOWING GRAIN AND PASTURING CATTLE ON. — Sowing grain and pasturing cattle on the sides of a public road-bed are not sufficient to show either an abandonment of the use of the road by the public, or its adverse possession by the person doing such acts.

ID. — DEED — BOUNDARY — TITLE PASSES TO CENTER OF ROAD. — A deed which describes the property conveyed as bounded on one side by a public road carries the title to the center of the road, subject to the public user.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. B. Hall,* for Appellant.

*J. H. & J. E. Budd,* for Respondent.

FOOTE, C. — This is an action in ejectment for a part of what was once used as a public highway, and, as alleged, had been abandoned by the public for more than five years.

The parties to the suit had through their several grantors become purchasers by deed of the land lying on each side of the road-bed.

The plaintiff claimed the whole of the road-bed; the defendant, that he owns up to the center or thread of the road, and is entitled to its possession if it is abandoned, but argues that it had not been abandoned as a public road.

One Berry had obtained on or about the 26th of October, 1858, from the state a certificate of purchase of school lands, which included the land in dispute, and had paid twenty per cent of the purchase-money required by law.

On the seventeenth day of May, 1861, he assigned that certificate to one Showers, and on the 18th of that month made a bargain and sale deed of the land it embraced to the same party.

In the year 1862, as we think the evidence tends to show, Showers by deed of quitclaim, carrying whatever title he then had, which appears to have been lost, conveyed to one Drais a tract of land, a part of that before conveyed to the former by Berry, containing about four or four and a half acres, more or less.

The plaintiff by mesne conveyances claims under a patent issued to Showers on the twenty-fourth day of May, 1873.

In all the conveyances through which the plaintiff claims, there was excepted therefrom the land conveyed by Showers to Drais, a part of which, as the defendant alleges, is the land in dispute.

The court, trying the case without a jury, gave judgment in favor of the defendant, and from that and an order denying a new trial the plaintiff appeals.

The most important claim of the plaintiff to the right of recovery in the action was that he became the owner in fee of the land in suit after the receipt from Showers of the deed of June 23, 1873, and after the patent was issued.

The court below seems to have been of the opposite opinion, basing its decision upon its belief that in law the patent title inured to the support of that conveyed in the deed from Showers to Drais, and included the land in the road up to the center thereof, opposite to the land mentioned in that deed, and this would carry the title to the southern forty feet of that road; and because it appeared to the court that the land sued for still remained a part of the public road or highway called the Mokelumne Hill road.

The plaintiff claims that he was the owner of the land by virtue of this patent, by another title than that which passed by the quitclaim deed of Showers to Drais, and from Drais by a conveyance to the defendant, and that at the time he obtained title under that patent, the land in dispute had been abandoned by the public as a road,

had never been in the possession of Lynch up to the time of the alleged ouster, and did not pass to him by his deed from Drais, and therefore, that when the road was abandoned by the public, the title to it reverted to him, under his deeds from his grantor and the patent of 1873, that he had title to it by five years' adverse possession, and that the land was never legally dedicated as a public road.

What is commonly called the five-hundred-thousand-acre land grant has been held by this court to have been a present grant by the United States to the state of California, and when a due selection of and location of such lands had taken place under the laws of this state, a perfect title therein vested in the state. (*Bludworth* v. *Lake*, 33 Cal. 255.)

By sections 3 and 6 of the act of April 23, 1858 (Sess. Laws 1858, pp. 248, 249), it is provided that the certificate of purchase is not to be issued until after a location is permitted in accordance with the laws of the United States by their proper land-officers; that the state locating agent shall not issue the certificate of purchase for such lands until after a location has been properly and legally made. It will always be presumed, in the absence of proof to the contrary, that a public officer has regularly performed his duty. (Code Civ. Proc., sec. 1963; sub. 15.) Hence the fact that Berry had issued to him a certificate of purchase of the land in question is presumptive evidence of the fact that all had been done by the proper officers which was required in order to vest the legal title of such land at the time of the issuance of the certificate of purchase in the state of California.

The question then arises, What title, if any, did Berry and his assignee of the certificate of purchase acquire as against the state, so as that a valid dedication of the land for a public road could be made?

By the act of 1859 (Sess. Laws 1859, p. 227) and the act on page 332, same laws, it appears that such a cer-

tificate was declared .to vest a *prima facie* title to the holder thereof and his assigns, subject to the right of the state to have a forfeiture thereof on non-payment of the whole amount of the purchase-money, and not affecting the right of any party in adverse possession of the land.

In the present case there was no one in adverse possession of the land at the time Showers was in possession of it, and the certificate of purchase was never forfeited, the state having been paid for the land in full.   It must therefore be apparent that when the patent was issued to Showers, the assignee of the certificate of purchase from Berry, that such patent did not confer any different or distinct title upon Showers or his assigns than that which had been conferred by the certificate of purchase, viz., a *prima facie* legal title, which might under some conditions be forfeited or contested, and which by the patent was made an absolute legal title,—it being strengthened but not altered by the issuance of the patent to Showers.   The reasoning upon a similar point in *Neil v. McNear*, 57 Cal. 426, is of force in this case.

We must therefore conclude that the title which passed by the deed to Drais from Showers was fed by the patent, and that Lynch, Drais's grantee, held the legal title to the land in dispute, and he was not divested of it by the issuance to Showers of the patent of 1873, or the deeds from Showers or his grantee from Watkins, provided the original deed from Showers to Drais conveyed to him the land in the road up to its center or thread, subject to the public user.

The *prima facie* legal title to the land was in Showers, as it appears to us, when the Mokelumne Hill road was dedicated by him to the use of the public.

Having such a title, it was within his power to make such a dedication as we think he did make, and the acceptance of it by the public was made evident by the record.

The plaintiff, then, had no title paramount to that of the defendant, by reason of the patent of 1873.

The largest portion of the land in controversy was never in the possession of either of the parties to the action. It had, while it remained a part of the public road, been overflowed, and occupied as a permanent channel by the Mormon Slough. The road had been widened by an additional dedication of land by Church, the plaintiff's grantor, in order to replace the land occupied by the waters of the slough. The small portion of high ground which remained was, as it appears to us, susceptible of use by the traveling public to some extent at least. It had never been fenced in by the plaintiff or any one. It appears to have been treated pretty much as one side of some roads are, where the center of the road-bed is most used by those traveling it. The fact that on the land thus lying in the highway, as it always had since its first dedication to the public use, the plaintiff had sown some grass seed and staked out some of his cattle to graze on it, did not give him such an adverse possession thereof, even if the road had been abandoned by the public, as would enable him to obtain title to it through the statute of limitations, as against the defendant, whose deed from Drais and that from Showers to Drais gave title to the land to him; provided, as we have before said, the road up to its center, as it lay opposite to and adjoining the land described in his deed, passed to him by such deed.

Any ordinary observer traveling upon the public roads of the more thickly populated portions of this state will often perceive the land on one or both sides of a road-bed that is fenced out sowed in grain and pastured by the proprietors of the adjoining land, while all the travel for many years has been confined to the center of the road-bed; and yet we do not see that such acts should of themselves be held to show either an abandonment of the use of the road by the public, or its adverse posses-

sion by the person who has thus sowed, reaped, and pastured his stock thereon.

We think the evidence, taking in all the circumstances surrounding the sale of the land and the deed made to it by Showers to Drais, indicates that there was no intention entertained by the grantor or expressed in the deed to limit the title of Drais to the land by the southern boundary of the Mokelumne Hill road.

That road, it appears to us, was described in the lost deed as a boundary to the land conveyed therein, and therefore carried with it the right and title to that part of the road, up to its center or thread, which laid opposite to and adjoining "the four or four acres and a half, more or less," of land which the deed purported to convey, subject to the public user. (*Moody* v. *Palmer*, 50 Cal. 36.)

Inasmuch as the cause was tried by the court, and it was agreed upon all sides that the width of the road as originally used by the public was eighty feet, we do not perceive in what way the admission in evidence of the road survey objected to could have had any influence prejudicial to the plaintiff.

The findings were warranted by the evidence; we perceive no prejudicial error in the record, and the judgment and order should be affirmed.

SEARLS, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.