## MONAGHAN v. MEMPHIS FAIR, ETC., CO.

### (*Jackson.*   May 30, 1895.)

1. EASEMENT. *Abandonment of.*

   An easement in lands originally laid out by adjoining owners as a street, but never used as such, will be presumed to have been abandoned by the dominant owner, who, for more than thirty years, incloses and obstructs a material part of its width with a fence, and makes and claims no use of the remaining part during that time. (*Post, pp. 109–112.*)

   Cases cited: 17 Am. Dec., 710; 16 Barb., 150; 140 Mass., 254; 44 Am. Dec., 399; 5 Gray, 409; 123 Mass., 155; 16 Barb., 184; 16 Wend., 531.

2. SAME. *Estoppel to claim.*

   One who, for more than thirty years has maintained a fence standing twelve feet out in an alleged street, created by agreement of adjoining landowners, but never accepted by the public, cannot obtain the aid of the Court to open up such street as against a person owning property on the other side thereof and embracing part of the street, who purchased while the street was thus obstructed, in ignorance of the former's contention that the street existed, and built a fence up to his without objection or notice from him of the existence of the street. (*Post, pp. 112–114.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

Monaghan *v.* Memphis Fair, etc., Co.

WM. M. RANDOLPH & SONS for Monaghan.

MORGAN & McFARLAND for Company.

WILKES, J.    The bill in this cause seeks to open up Chestnut Street, in front of complainant's property, and to recover damages for obstructing it.    The answer denies the existence of the street, and, especially, the right of complainant to have it opened.

On the hearing, the Chancellor decreed that complainant was entitled to no relief, and dismissed his bill, and complainant appealed and has assigned errors.

Complainant owns two lots of land on east side of Chestnut Street, lying contiguous, one containing nineteen acres, and the other, to the south of it, containing ten acres, near the city of Memphis.    The street claimed by complainant, is closed in front of the nineteen acres and in front of one-half the ten acres.

Complainant's insistence is that the street exists by virtue of a dedication to the public, and also under a written agreement between former owners to open up a street, as now contended for, to be thirty-six feet wide, and a plat of the proposed street and surroundings was prepared and caused to be registered in Shelby County.    Under this agreement, twelve feet of the street was to be given by Swayne, the owner of the land east of the ten acres, and twenty-four feet by Thomas, the owner of the land on the west, up to Thomas' line, when the entire thirty-six feet was to be opened up as an extension through

Thomas' premises. Complainant holds the ten acres under Swayne and the nineteen acres under Thomas, and defendants hold indirectly under Thomas alone.

Defendant's contention is, that the street was never, in fact, opened through Thomas' premises, was never accepted and used by the public, and that complainant, and those under whom he claims, have never given the twelve feet, but that complainant has now, and has had all the while, this twelve-foot strip inclosed, and, hence, can have no relief. Complainant admits this, but insists that it has been inclosed by mistake, and in ignorance of the exact location of the line of the street. There is no offer in the pleadings to surrender and open up this strip, nor can we find such offer in the record in the Court below, but in the argument in this Court a readiness to surrender is averred, and complainant insists that, in any event, he has an easement in the proposed street as a private right of way, if not a public street.

It appears that, while the written agreement in regard to the street was made as early as 1856, the plat relied on was not made until 1872, and there is no proof that, under this plat, any lots were sold to front on this proposed street.

The defendant association bought its premises when the street was thus closed and the fence of complainant standing in it, and without any notice that a street was claimed to extend through the premises.

We think that the decided weight of evidence is,

that the street was never opened up and dedicated through the Thomas premises, and never used as such by the public. There was occasional passing across these premises in a diagonal direction, as is usual in case of commons left wholly or partially unfenced.

The street was never worked by any municipal or county authorities, and at the point where it was said to enter the Thomas premises, was virtually impassable. It remained in this condition for a long number of years, during which the lands on either side of the partition fence were cultivated up to the fence, and was virtually in this condition when defendant bought, complainant's fence then standing twelve feet out in the proposed street, where it had been maintained by him and former owners for thirty years or more. When defendant bought, it fenced up to this line, and opened its premises as an exposition and fair grounds.

Neither the conveyance to complainant, nor to those under whom he claims, calls for or mentions this street at any point north of Maple Street, or rather the south line of what is called the White tract.

We are unable to see how complainant can receive any aid from the Court to open up a street or private way, and remove obstructions from it, when he himself is, and all the while has been, obstructing and closing it for more than thirty years, and especially must this be so when defendant bought its property in ignorance of the complainant's conten-

tion that a street or way existed at the place, and built its fence alongside .complainant's without objection, or notice from complainant of such a street or way. It is analogous to the case of a man standing by and seeing another build upon and occupy his premises under a claim of right, and without objection. In this case, complainant actively misleads defendant by himself occupying and closing up the street and abandoning his claim to it. There is nothing in the Thomas claim of title to give defendants who hold under it any notice of a street or way except the old original agreement referred to, which does not appear to have ever been acted upon by opening the proposed street north of Maple Street to the public, and which complainant had expressly repudiated and abandoned by himself closing and occupying the street. Treating the right of way as a personal right under the agreement, it is an easement, and it is well-settled law that an easement may be abandoned, and this abandonment will be presumed from acts of the dominant owner inconsistent with its future enjoyment, and this is true when the easement is acquired by grant as well as when it exists by prescription, since, in all cases of prescription, the law presumes a grant at some former time, and it will also be presumed from nonuser when the right arises by prescription, if such nonuser continues a sufficient time.

When the act which prevents the servitude is by the party to whom the servitude is due, it is wholly

extinguished, but when it is by a third person it is only suspended. *Taylor* v. *Hampton*, 4 McCord, 61 (17 Am. Dec., 710); *Jewett* v. *Jewett*, 16 Barb., 150; 6 Am. & Eng. Enc. L., p. 148, note. And while it is true, as a general rule, that an interest in real estate cannot be conveyed except by deed, it is well settled that an owner of a right of way or other easement may, without deed, abandon his right so as to relieve the servient estate of the incumbrance. *King* v. *Murphy*, 140 Mass., 254; *Dyer* v. *Sandford*, 9 Met., 395 (44 Am. Dec., 399); *Pope* v. *Devereux*, 5 Gray, 409; *Canny* v. *Andrews*, 123 Mass., 155; *Crain* v. *Fox*, 16 Barb., 184; *Corning* v. *Gould*, 16 Wend., 531.

In the latter case the easement, which was the right to use an alley, was based upon deed and prescription both. Many cases are cited and commented on. The facts make the case very similar to this, as one owner had occupied a part of the alley with a fence and house, and sought still to keep the alley open and unobstructed by the adjacent owner. The Court laid down the law fully, and the reason for it, and said: "There is no question that the way has been partially obstructed by permanent erections on the side of the plaintiff. Its use has been seriously narrowed, not to say destroyed. The way or alley was an entire thing, and if divided or extinguished in part by the act of the party, it is an extinguishment of the whole. . . I am inclined to think the encroachment by the (plaintiff's) build-

8—11 p

ing alone would have worked a complete extinguish-
ment, but the fence (built by him) in the center was
a most unequivocal act by all the authorities.''
Cases to the same effect might be multiplied, but
this one in 16 Wendel is strictly in point.

We think the Chancellor was correct in refusing
any relief, and his decree is affirmed with costs.