## MARION M. WHITESIDES, APPELLANT, *v.* GEORGE W. GREEN, SR., ET AL., RESPONDENTS.

HIGHWAYS—PRESCRIPTIVE RIGHTS—APPEAL—REVIEW OF FINDINGS.

1. Where the public have acquired the right to a public highway by user, they are not limited in width to the actual beaten path. The right carries with it such width as is reasonably necessary for the public easement of travel, and the width must be determined from the facts and circumstances peculiar to each case. The highway having been permanently fenced, the usual width of highways in the locality, and the width recognized by the owner of the fee and the public, when there has been such recognition, are pertinent facts from which, in connection with other evidence, width may be inferred.

2. The easement acquired by the public vests in them the mere right of passage over the land, and does not divest the owner of the fee, and he may continue to make any use thereof which is not incompatible with the public easement.

3. Where such a case is tried by the court without a jury, the findings of fact will not be disturbed, unless they are so manifestly erroneous as to demonstrate some oversight or mistake.

(No. 669. Decided April 13, 1896. 44 P. R. 1032.)

Appeal from the district court of the Third judicial district, Territory of Utah. Hon. S. A. Merritt, *Judge.*

Action by Marion M. Whitesides against George W. Green, Sr., and others, for damages sustained by the removal of a fence from a highway claimed by Davis county, and to enjoin defendants from interfering with the land claimed by plaintiff. From a judgment for defendant plaintiff appeals. The question in chief was whether there had been a dedication of a 3-rod road whose width plaintiff sought to narrow.

*Sutherland & Murphy,* for appellant.

We present herewith a few considerations with respect to the contention for a dedication of a 3-rod road.

The contention is for an *implied* dedication. No express dedication of any character was, or could be claimed. And the implied dedication claimed must be founded upon the public user, and the owner's failure to dissent therefrom for the statutory period—for nothing else was shown or attempted to be shown.

While it is undoubtedly true that no particular formality is required for a dedication, and it may be made by the acts or acquiescence of the owner, and, in Utah at least, probably does not require an acceptance by the public authorities charged with the establishment and maintenance of highways, it is nevertheless true that the essential element in all dedications, express or implied, is the *owner's intention* to dedicate. While it is true that

this intention will be gathered from certain acts and acquiescence, and will be conclusively held to have existed even as against the land owner's subsequent repudiation and resistance, upon a principle said to be founded upon equitable estoppel, it is equally true that the intention is the ultimate thing to be sought.

"The vital principle of dedication is the intention to dedicate, the *animus dedicandi,* and whenever this is *unequivocally manifested,* the dedication, so far as the owner of the soil is concerned, has been made." Angell, Highways, sec. 142; *Wilson* v. *Hull,* 7 Utah 90.

"The intent essential to a valid dedication must be to vest an easement at least in the public. Where there is nothing more than a mere license, there is no dedication. Where the use is merely permissive, with authority in the owner of the servient estate to put an end to the use at his pleasure, there is no dedication; nor in such a case are there such acts as will enable the courts to infer an *intent* to dedicate." * * * * * *

"While it is true that the *intent* to dedicate may be inferred from facts without proof of express declarations, yet it is also true that the facts must be such as indicate an unequivocal intent to devote the strip of land to the public use." Elliott, Roads and Streets, pp. 96-7.

Where circumstances exist which negative the intent to dedicate, no dedication can be presumed.

"Where the situation of the land is such as to indicate that it does not form part of the way, although it may be *alongside of the way* and be *used by the public,* no dedication can be presumed without strong evidence of an intent on the part of the owner to dedicate the land to the use of the public."

" *Where the owner makes use of the land for his own private purposes and the character of the use is inconsistent with the right of the public to the way as a street or road, the pre-*

sumption of dedication will be rebutted, although the public may have used the way for travel for many years." Elliott, Roads and Streets, p. 131; *Irwin* v. *Dixon*, 9 How. 10; *McCornick* v. *Baltimore*, 45 Md. 512; *Bowers* v. *Suffolk Co.*, 4 Cush. 332; *Bowman* v. *Wickliffe*, 15 B. Monroe 84; *Green* v. *Bethen*, 30 Ga. 897; *Tallmadge* v. *East River Bank*, 26 N. Y. 108; *Atty.-Gen'l* v. *Whitney*, 137 Mass. 450; *Brinck* v. *Collier*, 56 Mo. 160.

It appeared from the testimony of the witnesses that some of the recognized highways in the neighborhood were only two rods wide. Why a width of three rods should be required here while two rods is found sufficient elsewhere in the same agricultural neighborhood has not been explained.

*Burrows* v. *Guest*, 5 Utah 91, upon which so much reliance is placed by defendants, is clearly distinguishable from this case.

The principle there laid down was that: "When a highway is established by user merely over a tract of land of the usual width of a highway, or over a tract of land where, *by a survey and plat which has been recognized and adopted by the owner*, a street or highway of a certain width is laid out, the right of the public is not limited to the traveled part, but such user is evidence of a right in the public to use the whole tract as a highway, by widening the traveled part or otherwise as the increased travel or exigencies of the public may require."

The deed under which the owner claimed referred to a plat and survey which was made and filed 30 years prior to the alleged trespass "and had been generally acted upon and received as correct during all that time." and this showed the land in controversy as a street. Three rods of the width had been turnpiked by the county at a cost of $593. The use of a portion of the strip by the land owner in the planting of trees was not inconsistent

with the public highway easement.   C. L. sec. 2081; sec. 203.

Even under these facts the court held, not as a matter of law that a highway was shown, but that these circumstances should have been submitted to the jury.

In that case the real question was whether the public by non-user had lost what originally had undoubtedly been its own; in this case the question is whether the public by its use of a well-defined track through unenclosed fields can broaden it into a regular highway for which no trace of original grant or dedication can be found.

*J. H. Wilcox* and *Bennett, Harkness, Howat & Bradley*, for respondents.

If the contention of the plaintiff is correct, the only question for the trial court to determine was as to where the traveled track was, and when that was shown it would follow as a matter of law that the traveled track and nothing else was the road.   But such is not the law.

On the trial it was a question of fact to be determined by the court as to what constituted the public highway, and he had to take into consideration, not only where the traveled track was, but many other things shown by the evidence.

In the case of *Burrows* v. *Guest*, 5 Utah 91, the court held in its opinion, commencing on page 98, that it was error for the court in that case to instruct the jury "upon the theory that the limits of a highway could not be shown to extend beyond the portion actually used and covered by the traveled track, and that the owner's continued possession and the use of a strip along the south side thereof, as before stated, was conclusive evidence against its dedication for the use of the public as a highway.'

And the court further say in the opinion, on page 98:
"When a highway is established by use merely, over a
tract of land of the usual width of a highway, or over a
tract of land where, by a survey and plat which has been
recognized and adopted by the owner, a street or high-
way of a certain width is laid out, the right of the public
is not limited to the traveled part, but such use is evi-
dence of a right in the public to use the whole tract as a
highway, by widening the traveled part or otherwise,
as the increased travel and exigencies of the public may
demand."

And on page 99 the court say: "In determining the
extent of the dedicatoin all the circumstances may be
considered—the width of the highways in the vicinity of
the land in question, the width of highways in a system
in which the one in controversy forms a part.  *  *  *
*  *  *  It is but a matter of common understanding
and experience that it is desirable and usual that streets
and highways should be and are of uniform width."

And again, commencing at the bottom of page 99:
"The owner of the fee has the right to use land in any
way not inconsistent with the requirements of the
public."

Applying the law there laid down in the case at bar
we find that this road in question runs north and south,
connecting at the north with a public highway running
east and west, which is four rods in width, and connect-
ing at the south end thereof with a public highway, part
of which is four rods in width and the remainder six rods
in width.   And the uniform testimony of all the wit-
nesses is to the effect that the usual width of highways in
the road district of which this forms a part is four rods.
It is true that they say there are some roads only two
rods in width and some six; but the general and usual
width is four rods.  This road in controversy was a part

of a system of highways that had been long established and not less than four rods in width, connected with a highway on the north four rods in width and with one on the south four rods in width, and it accommodated not only the people who lived upon it, but was the only convenient means of travel for a long distance between the road running east and west on the north and the main public highway on the south.

In the case of *Sprague* v. *Waite,* 17 Pick., 309, the court on page 317 say in speaking of the rule contended for in this case by the plaintiff:

"This as a general rule is correct; but if it is intended to say, in regard to ancient highways, that the right of the public is limited to that portion of the highway usually called the traveled path, that part actually used and worn by feet and wheels, it is a mis-application of the rule. Where a track three or four rods wide, such as is usually laid out for a highway, and like the ancient road in question, which was the old thoroughfare from Salem through Medford to Boston, has been used as a highway, although twenty or thirty feet in width have been used as a traveled path, still this is such a use of the whole as constitutes evidence of the right of the public to use it as a highway, by widening the traveled path or otherwise, as the increased travel or exigencies of the public may require."

BARTCH, J.:

This controversy arose over a public highway, running along the western line of the appellant's land, and south through some leased land. It is about a mile and a half long, and connects two other highways, running east and west. Counsel for the appellant concede the existence of the highway, but its exact location and its width are in dispute. On the question of the location the court

found substantially that the western line of the appel-lant's land formed the center line of the two highways, and that it extended on the same line through his leased land. This finding seems to be in entire accord with the location recognized by the appellant, as shown by his pleading and evidence. Among other things, he alleged that on the 25th day of March, 1895, he "had erected, and there was standing on said farm, parallel with the wes-terly boundary thereof, a substantial fence, separating the same from an adjoining highway." At the trial he testified, as appears from the abstract, that on the same day "there was located on said land, parallel with and east of the western boundary line thereof, a fence which witness had erected at a distance of about eight and one-fourth feet east of said western boundary line"; and on cross-examination claimed expressly that the road was one rod wide. If it is one rod wide, and the appel-lant erected a fence eight and one-fourth feet east of, and parallel with his western boundary line, to separate his farm from the "adjoining highway," then it is per-fectly clear that the western boundary of his land forms the center line of the highway, whatever may be the width thereof. Thus, by his declarations and acts, he has distinctly admitted its location, and cannot now be heard to dispute it. Whether or not there was originally an express dedication is not material, because of the admission of the appellant, and because it appears from the evidence that the highway has been traveled by the public continually and uninterruptedly for a period of more than 15 years. Under these circumstances the law implies a dedication of the land on which the highway is located to the use of the public for the purposes of travel.

The next question is, how wide is the highway which, the public have acquired? Counsel for the appellant

appear to insist that the public have only a right to travel on the beaten path, and must be confined to one rod in width. We cannot agree with counsel that, where the public have acquired the right to a public highway by user, they are limited to such width as has actually been used by them. Generally, the greater part of the travel on a county highway is doubtless confined to the track made by vehicles, but there must be room enough for travelers with wagons, carriages, or implements to pass each other, and for necessary improvements and repairs to be made so as to keep it in a suitable condition. The right acquired by prescription and use carries with it such width as is reasonably necessary for the public easement of travel, and where the public have acquired the easement the land subject to it has passed under the jurisdiction of the public authorities, for the purpose of keeping the same in proper condition for the enjoyment thereof by the public. Such authorities are bound to keep the road open and in suitable repair, and, if obstructions be placed thereon, it is their duty to remove the same, and care for the rights of the public. The easement acquired by the public, however, vests in them the mere right of passage over the land, and does not divest the owner of the fee, and he may continue to make any use thereof which is not incompatible with the public easement. This private right is not inconsistent with the public use, nor with an effectual dedication, and must be respected by the authorities, so far as it does not interfere with a safe, convenient, and unobstructed right of passage. The purpose for which the easement was acquired must determine the effect of the right parted with by the owner, and the width necessary for the enjoyment of the highway by the public. Where the easement is acquired by prescription or use such width must be determined from a consideration of

the facts and circumstances peculiar to the case, because in such event the court cannot say that in law the highway is of a certain width, in the absence of statutory provision. The highway having been permanently fenced, and the usual width of highways in the locality, if shown, are pertinent facts from which, in connection with other evidence, width may be inferred. Whatever may be the width in any particular case, the easement cannot be limited, when acquired by user, to the actual beaten path. Angell, in his Treatise on the Law of Highways, in section 155, says: "Where there is no other evidence of dedication than mere user by the public, the presumption is not necessarily limited to the traveled path, but may be inferred to extend to the ordinary width of highways; or, if the road be inclosed with fences, to include the entire space so inclosed."

So this court, in *Burrows* v. *Guest*, 5 Utah 91, 12 Pac. 847, speaking through Mr. Justice Henderson, said: "When a highway is established by user merely over a tract of land of the usual width of a highway, or over a tract of land where, by a survey and plat, which has been recognized and adopted by the owner, a street or highway of a certain width is laid out, the right of the public is not limited to the traveled part, but such user is evidence of a right in the public to use the whole tract as a highway, by widening the traveled part or otherwise, as the increased travel and the exigencies of the public may require. * * * In determining the extent of the dedication, all the circumstances may be considered,—the width of the highways in the vicinity of the land in question, the width of highways in a system of which the one in controversy forms a part, any circumstances of recognition by the owner of the fee and the public of definite and fixed limits " Washb. Easem. *137; *Davis* v. *City of Clinton*, 58 Iowa 389, 10 N. W. 768; *Sprague* v. *Waite*,

17 Pick. 309; *Ellsworth* v. *Lord* (Minn.) 42 N. W. 389; *Watkins* v. *Lynch*, 71 Cal. 21, 11 Pac. 808; *Moore* v. *Roberts* (Wis.) 25 N. W. 564; *Hunter* v. *Trustees*, 6 Hill 407, 412.

In the case at bar as it appears from the evidence the road over which the dispute arose runs north and south, connecting at the north with a public highway four rods in width, running east and west, and at the south end thereof with one a part of which is four rods, and the remainder six rods wide. The highways in the locality seem generally to be four rods in width. The court found that the highway in question was three rods in width, one-half thereof being on one side and one-half on the other side of the line on which it was located, and that such width was necessary to accommodate public travel. In controversies like this the width of the highway presents a question of fact for the jury to determine from all the facts and circumstances proven, and when such a case is tried by the court without a jury, as in this instance, then it is a question of fact to be determined by the court, and in such event the findings of fact have the same force and effect, respecting the width of the road, as a verdict. The findings will not be disturbed unless they are so manifestly erroneous as to demonstrate some oversight or mistake. *Dooly Block* v. *Salt Lake Rapid Transit Co*, 9 Utah 31, 33 Pac. 229; *Davis* v. *City of Clinton*, 58 Iowa 389, 10 N. W. 768.

It is not deemed necessary, in this case, to refer to the evidence in detail, because, from a full and deliberate examination thereof, we are convinced that it is ample to support the findings of the court; and therefore its decree, based on the findings, must stand. We have also examined the rulings of the court respecting the admission of testimony, and conclude that neither the rulings nor the record contains any reversible error. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.