# BROWN v. OREGON SHORT LINE RAILROAD COMPANY.

No. 1943. Decided February 2, 1909. Rehearing Denied, July 7, 1909 (102 Pac. 740).

1. DEDICATION — ACTS CONSTITUTING DEDICATION — CONVEYANCES. Plaintiff's intestate, owning two contiguous lots in a block, sold three parcels of land therein by metes and bounds, and thereafter executed a deed, in which he conveyed to the grantees, "and to their heirs and assigns forever, a right of way or easement" over a strip of land lying between the parcels sold "for an alleyway or street, said alleyway to be used for any and all purposes for which a street or alleyway is commonly used." The strip formed a pocket opening on a public highway. *Held,* that there was no dedication of the strip of land as a public highway. (Page 260.)

2. DEDICATION—INTENTION. Dedication rests primarily on intention, express or implied.[1] (Page 262.)

3. BOUNDARIES — HIGHWAY AS BOUNDARY — STATUTORY PROVISION. Comp. Laws 1907, section 1120, providing that a transfer of land bounded by a highway passes title of the person whose estate is transferred to the center of the highway is declaratory of the common law, and has no application, where the recitals in a conveyance respecting a strip of land are such as to create a private as distinguished from a public easement. (Page 263.)

4. BOUNDARIES—HIGHWAY AS BOUNDARY—TITLE TO FEE. At common law, where a grant is bounded by a public street or highway which is expressly referred to in the conveyance as such, the title passes to the grantee to the center of such street or highway if the grantor had the title, and, if the street or highway is vacated, the land reverts to the abutting owner, but the grantor may restrict his conveyance by apt words so as to reserve to himself the title to the land within the street or highway. (Page 263.)

5. EASEMENTS—TRANSFER OF RIGHT. Where a deed conveyed an easement in a strip of land to the owner of adjoining land and to his heirs and assigns forever, a railroad company that subsequently acquired by purchase and condemnation the

---

[1] Whitesides v. Green, 13 Utah 341, 44 Pac. 1032, 57 Am. St. Rep. 740.

36 Utah—17

property benefited by the easement was entitled to the same rights in the strip of land as the persons to whom the easement was granted.   (Page 264.)

6. EASEMENTS—ABANDONMENT—SUSPENSION OF USE.  A mere suspension of the use of an easement does not constitute an abandonment.   (Page 264.)

7. EASEMENTS—ABANDONMENT.  Where an easement is granted over a strip of land to the owners of certain lots for the convenience of ingress and egress to and from a public street by the the occupants of the lot, and the land subsequently passes into the hands of a railroad company, and all the dwellings and other buildings are removed from the lots as well as the trees growing thereon and the lots and strip of land over which the easement extended are devoted to railroad uses, the easement is abandoned, and the title to the strip of land should be quieted in the owner relieved from the easement.  (Page 265.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by James A. Brown, administrator of the estate of Elias Morris, deceased, against the Oregon Short Line Railroad Company.

Judgment for plaintiff.    Defendant appeals.

AFFIRMED.

*P. L. Williams, Geo. H. Smith, Jno. G. Willis* and *H. B. Thompson* for appellant.

*Hurd & Hurd* for respondent.

APPELLANT'S POINTS.

The grant or reservation of a "way" or "road" without other words of description, carries an easement only, and not the fee in the soil.   (Washburn on Easements [4 Ed.], p. 48, citing *Jamaica Pond v. Chandler,* 9 Allen (Mass.) 164; *Graves v. Amoskeag Co.,* 44 N. H. 465; *Leavitt v. Towle,* 8 N. H. 97; *Whitesides v. Green,* 13 Utah 341.)

The grantee of a right of·way is not the owner or occupant of the estate over which it is granted. The mere running of trains over a road does not make the company running them an occupant of the land. (10 Ency. of Law, p. 399, note 5; *Rex v. Joliffe,* 2 T. R. 90.) "A grant in terms of 'a way' or of 'the privilege of a highway' does not convey the soil, or any corporeal interest in it." (Jones on Easements, sec. 208, citing *Lowe v. Streeter,* 66 N. H. 36, 20 Atl. Rep. 247.) "The grantee of such a right cannot prevent even a trespasser from using the land, if he does not impede the exercise of such right of way. A right of way is an easement merely, which does not conflict with the absolute proprietorship of the owner." (Jones on Easements, sec. 208, citing *Snyder v. Warford,* 11 Mo. 513, 49 Am. Dec. 94.) "The owner of a fee subject to a right of way may use the land for any purpose not inconsistent with the rights of the easement. What use the owner of the fee may make of such right of way is a question of fact to be determined by the jury." (Jones on Easements, sec. 394.) "An easement granted or reserved for a purpose definitely declared ceases when this purpose no longer exists." (Jones on Easements, sec. 842.) The owner of an easement may, without deed, abandon his easement so as to relieve the servient estate of the incumbrance. (10 Ency. of Law, p. 434, and note 7; Jones on Easements, sec. 849, and cases cited.)

FRICK, J.

This is an action to quiet title to a strip of ground 330 feet in length by 36½ feet in width, both parties claiming title to the strip and each praying for judgment that the title be quieted. The undisputed facts, in substance, are as follows: Respondent's intestate, one Elias Morris, up to November, 1882, was the owner in fee of all of lots 7 and 8 in block 65, Plat A, in Salt Lake City. Elias Morris died in March, 1898, and respondent a short time thereafter was duly appointed administrator of the estate of said Elias Morris, deceased. Block 65 is one of the original blocks

of Salt Lake City, 660 feet square. The block was origin-
ally divided into eight lots. Lots 1, 6, 7, and 8 fronted
east on Third West street, while lots 2, 3, 4, and 5, fronted
west on Fourth West street. Lots 7 and 8 are the only ones
in question here. Each one of the lots aforesaid was 330
feet in length by 165 feet in width. There were no alleys
in the block as originally platted. Lots 7 and 8 were con-
tiguous. The dividing line between them was the center
of one-half of the block east and west, and their end lines
formed a part of the center line of the block north and
south. Lot 8 was on the south and lot 7 on the north of
the center line of the block. Between the years 1882 and
1893, deceased, by proper deeds of conveyance, parted with
his title to all of lots 7 and 8. The land was sold and con-
veyed in parcels, and all the parcels were described by metes
and bounds in the deeds of conveyance, so that the north
boundary of all of the parcels sold in lot 8 was on the west
of the center line of the block, and was distant 20 feet from
that line, or 20 feet north of the original line of lot 8;
while the boundary line of all the parcels sold in lot 7 was
16½ feet distant from the center line of the block, or the
south line of lot 7. This left a strip of land 36½ feet
by 330 feet between the south boundary line of all of the
parcels sold in lot 7 and the north boundary line of all the
parcels sold in lot 8. This is the strip in controversy. In
conveying the first three parcels nothing was said in the
deeds about this strip of ground, but in describing the par-
cels sold all were so bounded as to leave this strip of ground
between those on the south and those on the north of the
strip. About a year after the first three parcels were
sold, the deceased, Morris, executed a deed in which
he conveyed to the grantees in his former deeds "and
to their heirs and assigns forever a right of way or easement
over the following described piece or parcel of land for an
alleyway or street, said alleyway to be used for any and
all purposes for which a street or alleyway is commonly
used." Then follows a description of the strip 36½ by
330 feet. After the execution of these deeds, all other deeds

of conveyance made by the deceased, Morris, contained the same clause granting an easement over the strip as aforesaid. The parcels, after they were sold, were all improved by the purchasers by placing dwellings and other buildings thereon, which were occupied and used for the purposes for which they were erected, and the strip of ground was used by the occupants of the buildings for ingress and egress from the public street to and from the buildings the same as an alley or street is commonly used. This strip formed a short street 330 feet long, and was called "Morris Avenue." There was no outlet at its westerly end, while its inlet was at the east end where it connected with Third West Street. In October, 1904, the appellant became the owner, partly by purchase and conveyance and partly by condemnation, of all of lots 7 and 8, and, in fact, of nearly all of block 65 except the strip in question. Thereafter it removed, or caused to be removed, all buildings and trees from lots 7 and 8, and the other ground in said block owned by it, and constructed permanent railroad, switch, spur, and other tracks thereon, and commenced to use, and is using, and contemplates to use, all of said ground in said block belonging to it, including said strip, for railroad purposes. In the deeds from the owners of the parcels of land in lots 7 and 8 to appellant the easement or right of way over said strip is described the same as in the deeds of the deceased to his grantees. No condemnation or other proceedings were ever had for the purpose of condemning said strip of ground and the fee remained in the deceased at the time of his death, unless it passed from him for reasons presently to be considered. Upon substantially the foregoing facts the district court made findings of fact and conclusions of law in favor of respondent and entered judgment quieting the title to said strip in him as administrator of the estate of Elias Morris, deceased, from which this appeal is prosecuted.

Appellant contends that the court erred in not entering judgment in its favor, for the reason that the title to the strip of ground is vested in it. This contention is based

upon the following grounds: (1) That Morris Avenue, covering the strip in question, was by the deceased dedicated as a pubic street or highway; (2) that in conveying the land bounded by a highway the title to it, by virtue of section 1120, Comp. Laws 1907, passes to the grantee to the center of the street or highway, and, when appellant purchased the land bounded by Morris Avenue, the title to the land within said avenue passed to it; (3) that respondent is estopped from claiming title to the strip in question. Upon the other hand, respondent insists that the fee to the strip of land in question always remained in the deceased, Morris; that it was not dedicated to public use by him, but that his grant of the strip amounted to no more than a private easement appurtenant to the land to be used by the persons named in the deeds or by their assigns; and that this easement has been extinguished for the reason that the land to which the easement was an appurtenant has been applied to such use that the easement can no longer be used as an appurtenant to the land for any purpose for which it was granted or intended.

Referring now to appellant's contentions, we find nothing in the record which indicates a statutory dedication. There was no attempt to make such a dedication, nor is there any claim that the public accepted the strip of ground as a public street or alley. Nor was there what is termed a common-law dedication. Dedication rests primarily upon intention, express or implied. (*Whitesides v. Green,* 13 Utah 341, 44 Pac. 1032, 57 Am. St. Rep. 740.) There is nothing either in the deeds or in the acts of the deceased that shows an intention, either express or implied, upon his part, to dedicate the strip to public use. (Elliott on Roads [2d Ed.], sec. 124.) Indeed, the language used in the deed shows that it was the intention to grant a private easement to be used in connection with the different parcels of land conveyed by the deceased. Access from the public street to at least some of the parcels of land sold by the deceased would have been difficult, if not impossible, except by passing over the strip in question, and an easement

over it was thus granted for the convenience of all purchasers alike. The fact that any one who had any social or business relations with either of the occupants of any of the parcels abutting on the strip could pass over it did not make it a public, as contradistinguished from a private, easement. Neither has section 1120, *supra,* any application to the facts in this case. That section is **3** merely declaratory of the common law. At common law, where a grant is bounded by a public street or highway which is expressly referred to in the conveyance as such, the title passes to the grantee to the center of such street or highway if the grantor had the title, and in such case, if the street or highway is vacated, the land in the highway reverts to the abutting landowner. The principle, however, is not of universal application, nor is it applicable under all circumstances. The grantor may restrict **4** his conveyance by apt words to the precise parcel of land intended to be conveyed, and he may reserve to himself the title to that portion of the land within the street subject to the public easement, and, if it appears that such was the intention of the parties, the intention will prevail and the land in the street, in case it is vacated, will revert to the grantor, and not to the abutting owner. (Elliott on Roads [2d Ed.], sec. 886; *White's Bank, etc., v. Nichols,* 64 N. Y. 65; *Lankin v. Terwilliger,* 22 Or. 97, 29 Pac. 268.)

But in the case at bar at least three of the parcels were granted by the deceased before he granted the strip as an easement, and no reference whatever is made to the strip, nor is the strip mentioned as a boundary in any of the other deeds, but the parcels are all distinctly described by metes and bounds, and an easement is granted over the strip. It is clear, therefore, that the doctrine that, where land is conveyed which is bounded by a street, highway, or alley, which is expressly referred to as such in the conveyance as a monument or boundary, the fee passes to the center of such street, highway, or alley, cannot be applied in this case. Nor is there anything upon which an estoppel can be based. The conveyances were all recorded, the record of which was

constructive notice of their contents, from which the intention that the strip was to be used as an easement and appurtenance to the several parcels could not well be mistaken, and thus could deceive no one. We are thus forced to the conclusion that the fee to the strip in question never passed from the deceased and is now vested in his heirs at law.

But, as we have pointed out, the appellant now is the owner of all of the parcels of land in lots 7 and 8 as the successor to the grantees of the deceased, and as such successor is entitled to the same rights in the strip of land as the deceased's grantees would be. If, therefore, the use of the easement has only been suspended by appellant, it cannot be deprived of its use, although the fee may be in the heirs of the deceased. If such were the case, the title to the strip would have to be quieted in the respondent subject to the easement which was granted by the deceased. (*White's Bank, etc., v. Nichols, supra.*) The appellant in its answer, however, makes no claim to the strip as owner of the easement merely, but it claims to be the owner in fee, and asks that the title be quieted in it. The respondent, however, contends that the easement has been abandoned, and has thus become extinguished, and therefore the owner of the fee is entitled to the strip relieved of the incumbrance created by the deeds granting the easement. The question, therefore, is: Has the easement become extinguished so that the fee is no longer burdened with it? The mere nonuser of an easement created by deed, however long continued, is not of itself an abandonment of it, but, at most, in connection with other facts, may be evidence of an intention to abandon or of actual abandonment. (Jones on Easement, sec. 863.) But an easement may nevertheless be lost or extinguished. The law with regard to this subject is stated in 14 Cyc. 1192, in the following words:

"An easement may be extinguished by an act of the owner of the easement which is incompatible with the existance of the right claimed. If the owner of the easement himself obstructs it in a manner inconsistent with its further enjoyment, or permits the owner of the servient estate to do so, the easement will be considered abandoned."

This text is sustained and illustrated in the following well-considered cases, namely: *Corning v. Gould,* 16 Wend. (N. Y.) 531; *Steere v. Tiffany,* 13 R. I. 569; *Taylor v. Hampton,* 4 McCord (S. C.) 96, 17 Am. Dec. 710; *Stenz v. Mahoney,* 114 Wis. 117, 89 N. W. 819; *Monoghan v. Memphis Fair, etc., Co.,* 95 Tenn. 108, 31 S. W. 497. The principle is also, inferentially at least, recognized in *Whitesides v. Green,* 13 Utah 341, 44 Pac. 1032, 57 Am. St. Rep. 740. In *Taylor v. Hampton, supra,* there is a convincing discussion of the question, in which the court, at page 106 of 4 McCord (17 Am. Dec. 710), states the doctrine in the following language:

"(1) That a servitude [easement] is extinguished by any obstruction of a permanent nature by the party himself to whom the servitude is due (or by his consent), or by the voluntary acquisition or acceptance of any other right or privilege incompatible with the exercise or enjoyment of it; and (2) that being once lost it is gone forever, and can never be revived but by a new grant."

Keeping in mind, therefore, the following facts: That the easement was granted for the convenience of ingress and egress to and from a public street for the benefit of the occupants of the several parcels of land abutting on the strip over which the easement was granted; that the land was intended to be used for and was devoted to private purposes when the grant was made; that all the dwellings and other buildings, as well as the trees situated on the several parcels of land to which the easement was appurtenant, have been removed; and that the several parcels of land as well as the strip are now being, and will continue to be, used for an entirely different purpose which is incompatible with the original purpose for which the easement was created—we are of the opinion that the

easement has been abandoned and has become extinguished within the rule laid down by all of the authorities that we have been able to find, some of which are cited above. The facts of this case, therefore, bring it squarely within the principle announced in *Jackson v. Hathaway,* 15 Johns. (N. Y.) 447, 8 Am. Dec. 263, and *Harris v. Elliott,* 10 Pet. 25-54, 9 L. Ed. 333. In both of these cases the fee was held to be in the original owner of the land over which the highway was located, and, when the highway (the easement) was vacated, the land within the highway was held to belong to the original owner discharged of the incumbrance resting thereon by reason of the easement. While the case of *Jackson v. Hathaway, supra,* has been distinguished upon some points in a later New York case, namely, *Holloway v. Southmayd,* 139 N. Y. 390, 34 N. E. 1047, 1052, the principle applicable here as announced in the former was not assailed or modified in the latter case. Nor is there anything decided to the contrary in the case of *McGinnis v. City of St. Louis,* 157 Mo. 191, 57 S. W. 755, cited by appellant's counsel. That case was clearly decided right upon the facts there involved. There is no other case cited by appellant except the last case referred to which has any direct bearing upon this case in view of the peculiar facts involved. We are constrained to hold, therefore, that in view of the undisputed facts in this case the district court committed no error in quieting the title to the strip in question in respondent as entirely relieved from the easement.

The judgment is therefore affirmed, with costs to responden'

STRAUP, C. J., and McCARTY, J., concur.